## GEORGIA MARBLE CO. v. STANDARD TILE CO.

Eastern Section. April 13, 1935.

Petition for Certiorari denied by Supreme Court, October 12, 1935.

Williams & Williams, of Chattanooga, for appellant.
Noone & Ziegler, of Chattanooga, for appellee.

AILOR, J. Complainant filed its original bill in the Chancery Court of Hamilton County for the purpose of collecting the sum of $712.35 claimed to be due it under a written contract, which was filed as an exhibit to the bill. This contract specified that complainant agreed to furnish interior marble for fifty-six showers for Army quarters at Fort Benning, Ga. Material to be shipped unboxed, but well packed and braced in car. The company further agreed to furnish marble for additional showers as above at an additional charge of $85 each, F. O. B. plant, freight allowed to Fort Benning, Ga. The price for the marble delivered, F. O. B. cars as specified, was to be $4,420. And the contract stipulated that no hardware was to be included in the contract.

Defendant, Standard Tile Company, filed an answer and cross-bill, in which it set out that it had paid in full for all marble shipped to it by the complainant. It insisted that it had been caused to lose considerable money by reason of misrepresentations made to it by the complainant in that the representation had been

made to it that bolts for installation of the marble supplied by complainant could be purchased from the Pocono Metal Manufacturing Company; that it relied upon such representations which were false, and had been forced to purchase bolts for use from Columbus Brass Company at a much higher price than that given to it by the complainant; that the complainant was justly indebted to it approximately $581.75, less a credit of $188, or a balance of $393.75, to cover the cost of the bolts ordered from the Columbus Brass Company, less the cost of the bolts ordered from the Pocono Metal Manufacturing Company and express charges on same.

Complainant and cross-defendant filed its answer to the cross-bill, setting up its contract to furnish marble of a stipulated amount for $4,420; that it furnished one additional shower at the contract price of $85, or a total contract amount of $4,505; that defendant and cross-complainant did not furnish it with freight invoice until February 4, 1932, when credit was entered in its favor for the amount of same, $116.73; that the amount sought by the original bill in the cause was the net amount due after the allowance of said credit for freight paid by defendant; that upon the request of cross-complainant it purchased bolts from Columbus Brass Company for which it paid 75 cents each to the amount of $470.25, and charged cross-complainant 84 cents each, or a total of $526.68; that it shipped defendant marble over and above the amount set out in the contract aggregating $302.40, leaving a balance due after deducting the express charges of $712.35.

Upon the trial of the cause the chancellor granted complainant a decree for the sum of $655.92, being the amount paid by it to the Columbus Brass Company for bolts in the amount of $470.25, marble reworked by complainant in the amount of $254.15, and extra marble furnished in the amount of $48.25, or a total of $772.65, less credit for freight charges paid by defendant of $116.73. The defendant's cross-bill was dismissed. From this action of the chancellor in entering a decree adverse to it, defendant and cross-complainant excepted, and has perfected its appeal to this court. It has assigned errors herein.

Defendant and cross-complainant has assigned as error the action of the chancellor in three particulars. For convenience, these will be treated in the inverse order from which they appear. The third assignment is to the effect that there is no evidence in the record to sustain the finding of facts upon which the decree was based. This assignment is more or less formal, and is not urged seriously. It will be treated in connection with the other assignments. It is insisted in the second assignment that the court erred in holding that the Georgia Marble Company was not the agent of appellant in this transaction, and in holding that the Georgia Marble Com-

pany had received no consideration for its service in designating the Pocono bolts.

The written contract exhibited with the bill, and sent up, in its original form, precludes any idea that complainant was to furnish the hardware necessary for the job in question. The item of hardware was discussed during the negotiations for supplying the marble by complainant, but this was excluded from the contract because defendant labored under the impression that it could get a cheaper price on same than that quoted by complainant in making up the estimate. And as a result of this situation, the estimate of costs of hardware was excluded from the contract as executed. Thereafter, complainant had no contractual obligation toward defendant with reference to the hardware. Thereafter the defendant, having failed to purchase bolts for setting the marble, wrote complainant, inquiring where same could be purchased. In response to this inquiry complainant gave defendant the name of Columbus Brass Company, that being the company from which complainant had previously purchased similar supplies. However, defendant did not order the bolts after getting the name of the company from which they could be purchased. Complainant wrote defendant in this connection as follows: "Replying to your letter of May 11th, requesting additional information on the list of hardware required for above job, which we furnished you, we are enclosing herewith a schedule sheet of this hardware, which we believe will give you the information required." "You will note that we have given two prices for each type of hardware, the lower price being as listed in the Pocono catalogue, and the higher price being the one we used in making up our estimate. These higher prices which we used in making up our estimate were for the purpose of covering the cost of handling, for bolts, transportation charges, etc., which we believe will give you ample coverage for the cost of the hardware requirements. If this does not give you all the information required, please advise us of any other information needed, and we will be very glad to furnish same."

Defendant ordered bolts from the Pocono Manufacturing Company, which it was thought would comply with specifications. However, upon receipt of the bolts, it was discovered that they did not conform to specifications, and that it would be necessary to alter the bolts or rework the marble. Complainant refused to rework the marble, for the reason that it was prepared according to specifications. Thereupon, on October 12th, defendant wrote complainant a letter with the following provision: "With reference to the question of cutting down the seats for the socket bolts, if you will send us the catalog number of the bolts from the Columbus Brass Co., we will secure the proper ones and return the ones we have on hand for credit. Should you have an additional copy of the

catalog of the Columbus Brass Co., which you are not using, we would appreciate your mailing it to us.'' On the following day, complainant wrote in response to this letter, giving the catalogue number of the bolts desired, and informing defendant that it did not have an extra catalogue of Columbus Brass Company. It appears that defendant followed this letter with a request that complainant enter an order for it for the bolts needed. This communication is in the file, and a letter confirming this is filed. It contains the following provision: ''On Oct. 14th we wrote you asking that you kindly order for us from the Columbus Brass Co., Columbus, Ohio, a quantity of socket bolts for above job, as per your Mr. G. H. Wilkinson's suggestion.'' The provisions in the letter of the 14th material to here consider are as follows: ''Since you are giving us two catalog numbers for these bolts, it is rather confusing for us, and to avoid any misunderstandings, we would appreciate your ordering them for us from Columbus Brass Co. direct.''

We think the chancellor correctly held that complainant received no consideration for its services in connection with the information given to defendant in the first instance as to the possible sources from which bolts might be purchased. Certainly such services were not a part of the contract, either directly or indirectly, for the reason that it was specifically excepted from the operation of the contract. And it was excepted from the contract for the reason that the defendant labored under the impression that the estimate for hardware as made by complainant was too high, and that it could obtain it at a cheaper price. By excluding this item from the contract, defendant absolved complainant of any duty in that connection, and the assistance it later attempted to render to defendant was a mere gratuity. We concur in the conclusions reached by the chancellor in this connection. The second assignment is accordingly overruled for the reasons above set out, and for the further reason that there is no provision in the memorandum opinion of the chancellor or the decree itself that the chancellor reached the conclusion that complainant was not the agent of defendant in ordering the bolts from Columbus Brass Company. But whatever the relationship was in this connection could make no difference here, for the reason that complainant complied strictly with the instructions of defendant in placing the order for the bolts with Columbus Brass Company. It had specific directions from defendant, and having complied with these directions, cannot be held to account for failure to ignore these instructions and try to buy the bolts at a cheaper figure from some other manufacturer. And it cannot be charged with negligence for having paid more than a fair price, when it paid the regular price charged by Columbus Brass Company, from which it was instructed to buy.

It is insisted in the first assignment that the chancellor erroneous-

ly denied defendant a credit for $282.15, the difference between the price of the Pocono bolts and the price of the bolts used, and the item of $386, being an amount claimed to have been lost and expended in additional labor by reason of alleged negligence of complainant, which delayed the work. The alleged negligence on the part of complainant was its statements in connection with the possible use of Pocono bolts for installing the marble. In this connection it is to be observed that complainant bored the holes in the marble in conformity with government specifications, and that the holes as bored were suitable for receiving the bolts manufactured by Columbus Brass Company, and that they were not suitable for receiving the Pocono bolts. In giving its preliminary estimate of the cost of bolts, complainant's figures were too high to satisfy defendant. It is not clear that this estimate was based upon the Columbus Brass Company bolt, but we think that this conclusion is the only logical one which could be reached. It is clear that the estimate was much higher than the cost of the Pocono bolt, and that only the two bolts were under consideration. The estimated cost of hardware prepared by complainant was the sum of $740, according to a blueprint filed, and there is no satisfactory proof in the record that this amount would not have covered the entire cost of hardware. On the other hand, it is insisted that complainant gave defendant information only as to Pocono bolts, and that it relied upon that information to its injury. In this connection it should be observed that the contract between complainant and defendant was executed April 29, 1931, and approved by Standard Tile Company, and approved by the office of complainant at Marietta, Ga., on April 30, 1931. As above set out, this written contract specifically excluded the hardware from consideration. It is insisted that defendant was misled by a pencil memorandum furnished it by complainant in which prices of Pocono bolts alone were quoted. This pencil memorandum is dated July 9, 1932, and was obviously furnished more than a year after the execution of the contract in question. We think one letter from complainant to defendant is a full answer to this proposition. This letter was written May 15, 1931, and is as follows:

"Gentlemen: Replying to your letter of May 11th, requesting additional information on the list of hardware required for above job, which we furnished you, we are enclosing herewith a schedule sheet of this hardware, which we believe will give you the information required.

"You will note that we have given two prices for each type of hardware, the lower price being as listed in the Pocono catalogue, and the higher price being the one we used in making up our estimate."

It appears from this letter and other exhibits that the complain-

ant was attempting to give to defendant the benefit of information in its possession. It had in its possession a catalogue of Pocono Manufacturing Company; it communicated this fact to defendant, and also communicated to defendant the fact that it was giving the prices as listed in this catalogue. In other words, it made no independent representations, true or false, to defendant, but passed on to it such facts as it possessed. But it is insisted in this connection that complainant used the Columbus bolt as a pattern for cutting the holes in the marble; that it did not disclose this fact to defendant, and did not disclose to defendant the fact that it had never used Pocono bolts. It is true that complainant used the Columbus bolt as a pattern, and it is also true that this pattern fulfilled the requirements of the government. There is no direct proof in the record that the Pocono bolt would have conformed to specifications. It is true that complainant had never used the Pocono bolt, and that it did not disclose this fact to defendant. However, it was under no contractual obligation to furnish defendant with any information in this connection, and its liability, if any, must rest upon this proposition that the complainant kept silent when it was its duty to speak and inform defendant fully.

The rule in this connection is that as a general proposition mere silence does not constitute actionable fraud. The rule adopted in this state is to the effect that there must be proof of fraud in order to sustain an action of this nature. "To sustain an action of deceit there must be proof of fraud, and 'fraud' is proved when it is shown that a false representation has been made knowingly, or without belief in its truth, or recklessly, careless whether it be true or false." Schwab v. Walters, 147 Tenn., 638, 251 S. W., 42.

Viewing the circumstances in connection with this matter in the light most favorable to defendant, the information given to defendant was a mere matter of opinion. Complainant gave such information as it had, disclosed the source of its information as being a catalogue of the Pocono Manufacturing Company, and it is well settled that mere expressions of opinion do not give rise to an action.

"Expressions of opinion and predictions, which are not statements of existing facts, and consequently are not fraudulent, and are insufficient for the purpose of rescinding a contract at law or in equity." Madison Trust Co. v. Stahlman, 134 Tenn., 402, 183 S. W., 1012, 1017.

"It is well-settled rule of law that in order to constitute actionable fraud and deceit, a false representation or statement must relate to a subject of fact which is susceptible of knowledge and that fraud and deceit cannot be predicated upon the mere expression of opinion or judgment, which is understood to be only such or

cannot be reasonably understood to be anything else." Ropeke v. Palmer, 6 Tenn. App., 348.

The rule of a duty to speak is stated in Ruling Case Law as follows: "Though generally mere silence does not amount to fraud, there are times and occasions where it becomes the duty of a person to speak, in order that the party he is dealing with may be placed on an equal footing with him; and when a failure to state a fact is equivalent to a fraudulent concealment, and amounts to fraud equally with an affirmative falsehood. But, while one cannot properly withhold the truth from those who have reason to expect information from him, those who do not look to him for information and expect no disclosure from him, cannot properly complain of his silence or successfully contend that he has suppressed the truth. Hence, in order that suppression of the truth may constitute fraud, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him. In other words, the facts concealed must be such as, in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose." 12 R. C. L., pages 307, 308.

Testing the transaction before us in the light of this rule, we fail to see wherein complainant was in any way bound to disclose the fact that it had used a Columbus bolt as a gauge in preparing the marble. This might be true if it were shown that complainant knew that these bolts alone would meet requirements, or if it had been shown that it knew the Pocono bolts would not answer the requirements. It was the duty of the complainant to prepare the marble so as to conform to government requirements, and when it had done this its legal duty ended. However, it went further than this and sought to assist defendant in getting the best price possible on the necessary hardware. Now defendant seeks to penalize complainant for trying to assist it. This it should not and will not be permitted to do. We think the defendant would have been chargeable with a reasonable compensation for the trouble the complainant assumed in getting suitable bolts for its use. But the chancellor denied any recovery on this account, and since his action is not complained of, there is nothing before us in this connection. It results that all errors assigned must be overruled, and since we find that the decree of the chancellor is well supported by the evidence, same is in all things affirmed.

Portrum and McAmis, JJ., concur.