# DOZIER et ux. v. HAWTHORNE DEVELOPMENT CO. et al.—262 S. W. (2d) 705.

Middle Section.   June 26, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

Thomas G. Watkins and Arthur Crownover, Jr., both of Nashville, for complainants.

Judson Harwood and Cecil Sims, both of Nashville, for defendants Hawthorne Development Co. et al.

Armistead, Waller, Davis & Lansden, of Nashville, for defendant Guaranty Mortg. Co.

Martin & Cochran, of Nashville, for Prudential Ins. Co.

FELTS, J.   The bill herein was filed by Culver B. Dozier and his wife, Margaret T. Dozier, to rescind a conveyance of a house and lot made to them by the Hawthorne Development Company, to recover what they had paid on account of the purchase, and to obtain other incidental relief.   The ground of relief alleged was that they had been induced to purchase the property by certain false and fraudulent representations hereinafter set out.

The property was Lot No. 17 on the Plan of Glen Echo Subdivision, a new suburban residential area in the Seventh District of Davidson County, developed by the Hawthorne Development Company, a Tennessee corporation. This house and lot was conveyed by that company to the complainants by deed dated October 23, 1948, for the consideration of $15,500, which was paid in cash by them— some $6,000 from money they had on hand and the balance from a loan procured by them on the property.

This loan was obtained by complainants on October 25, 1948, and on that day they conveyed their legal title to the property to Herschel Greer, Trustee, to secure their note for $9,300 for the loan made to them by the Guaranty Mortgage Company of Nashville.   The note was to be paid in installments over a period of years and was payable to the order of that company and was negotiated by it to the Prudential Life Insurance Company of America.   While this latter company was made a defendant to the bill, it was conceded to be a holder of the note in due course.

The house was completed and complainants began living there the latter part of October, 1948.   In February, 1949 they complained to their vendor, the Hawthorne Development Company, that their septic tank did not properly dispose of the sewage but let it well up in their

yard; and they called on the vendor to refund what they had paid on the property and on their note, and they offered it a deed conveying their equity to it and providing it should assume payment of the balance of their note.

The Hawthorne Development Company refused to do these things, and complainants brought this bill against it and its officers: Robert M. Condra, President, W. L. Bainbridge, Jr., Vice President, and William M. Wessely, Secretary and Treasurer. The bill charged that these officers of the company and its real estate agent made the false and fraudulent representations which induced complainants to buy the property. Such representations, which were the basis of the relief sought, were stated in the bill as follows:

"That complainants were induced to purchase said property only in reliance upon the representations made to them at the time the negotiations were started in September or October, 1948, and made to them while such negotiations were in progress that the residence was serviced by a septic tank operating properly, all as required by Davidson County, Tennessee, and by the Federal Housing Administration. It was represented to complainants that said property was eligible for an F. H. A. loan, which could be used by them in buying the same.

"Such representations were made to your complainants by the defendant, Hawthorne Development Company, acting through its Secretary-Treasurer and co-defendant, William M. Wessely and the real estate agent who interested complainants in acquiring the property.

\* \* \* \* \* \*

"Your complainants relied implicitly upon the representations made to them by defendants, Haw-

thorne Development Company, Condra, Bainbridge and Wessely, and the sales agent negotiating the sale and have only just discovered the fraud practiced upon them.''

The bill prayed that the Clerk and Master be appointed Receiver of the property to take charge of it, keep it insured, and keep it rented out pending the outcome of this litigation; and that complainants recover of the Hawthorne Development Company and its officers, Condra, Bainbridge and Wessely, $6,889.41 and the costs.

Complainants were still occupying the property, and their application for a Receiver of it was denied. Later they filed a supplemental bill stating that they had moved out of the house and praying that the Clerk and Master be appointed Receiver of the property to keep it insured and rented during the outcome of this litigation. They also prayed for recovery of $250 as their moving expense.

The Clerk and Master was appointed Receiver of the property but was directed not to rent it. It was stipulated that complainant's continued payments of the monthly installments on their note would be without prejudice to their rights in this suit; and it appears that they have continued to pay these installments.

The Hawthorne Development Company filed an answer to the bill, which was adopted by Condra, Bainbridge, and Wessely. This answer denied that defendants had made any representations to induce complainants to purchase the property. It averred that the property was not purchased by complainants on October 23, 1948 but on August 21, 1948; that a written contract of purchase had been made on August 21, 1948, pursuant to which the deed had been made to complainants on October 23, 1948.

The answer further averred that Dick C. Thompson, Sanitary Engineer of Davidson County, had approved

the location and installation of the septic tank on the property; and that proper and legal permits had been issued for placing said tank on the lot and its installation had been duly approved as required by law.

It was further stated in the answer that at the time complainants purchased the property the house was being constructed and the septic tank had not been commenced. The answer further stated that when complainants complained of the tank, after they had been living there some months, defendants investigated and found that the trouble could be corrected at small cost; and they offered to do this at their own expense, but their offer was refused by complainants.

A great mass of proof was taken, much of it outside the scope of the pleadings and foreign to the issue made by them: whether complainants had been induced to purchase the property by false and fraudulent representations by the vendor's officers and agent that the residence was serviced by a septic tank properly operating, and that the property was eligible for a F.H.A. loan, which could be used in buying it.

It appears that anyone proposing to develop a suburban residential area in Davidson County must first file a plan of the proposed subdivision with the County Zoning and Planning Commission. The Commission then asks Mr. Dick C. Thompson, Sanitary Engineer of the Davidson County Department of Health, to investigate the plan and report his opinion or judgment as to whether the plan is feasible and the land suitable for septic tank disposal of sewage.

If his report is favorable, the Commission may permit the planned development to proceed. But if his report is unfavorable, the Commission withholds approval and the development cannot proceed. Where the development

of a subdivision has been approved by the Sanitary Engineer and authorized by the Zoning and Planning Commission, the property becomes eligible for an F.H.A. loan. In order to procure such loan the Sanitary Engineer must sign "Form No. 2218" signifying that the sewerage disposal system is satisfactory to the health authority of the County.

It appears that there was an agreement between the Planning Commission and the Health Department by which the size of proposed lots was determined by the character of the soil with reference to its absorbing qualities. Testifying about this, Mr. Thompson said:

"In short, that was an agreement on determining lot sizes through percolation tests, observation, or whatever method might be desired or practical. However, it developed that I never did attempt to give an opinion without the percolation test, as far as a subdivision is concerned. That is, an official opinion. I will give anyone my opinion from observation, but I certainly wouldn't want to go on record saying that it isn't or it is any given thing without the percolation test to prove or disprove it."

Since the favorable opinion of Mr. Thompson was a prerequisite to the development of suburban residential subdivisions in the County, it seems to have become more or less a practice for prospective developers to ask him to look at or test property which they proposed to develop.

It appears that Mr. Thompson in 1945, at the instance of other parties, looked at the area, part of which later became Glen Echo Subdivision, and expressed his opinion that the land was of "poor porosity." In February, 1946, he went on some of the same property with Mr. Condra, made some tests of it, and expressed a like opinion to Mr. Condra.

A year or so later the Hawthorne Development Company was organized as a corporation, and acquired 43½ acres in that area. It was first proposed to divide this property into some 80 lots but Mr. Thompson disapproved, and stated the lots should each contain at least 40,000 square feet, approximately one acre.

Thereupon the corporation submitted a new plan dividing the 43½ acres into 43 lots. The Planning Commission called upon Mr. Thompson to investigate and report on this plan. He went on the property, made tests, and reported his opinion to the Planning Commission, approving all of the lots, including Lot No. 17, for septic tank disposal of sewage, except five—Lots Nos. 8, 9, 10, 37 and 38, which he said were "inadequate as building lots depending upon subsoil dissipation of sewage effluent."

This report was embraced in three letters of Mr. Thompson to the Planning Commission dated respectively January 16, March 22, and May 26, 1948. The Commission notified the Hawthorne Development Company of Mr. Thompson's approval of the plan (except the five lots mentioned), and furnished it with copies of his letters for its information and guidance.

The corporation proceeded to build the houses on the lots as laid out. It located the septic tanks and installed them as directed by Mr. Thompson, and he inspected and approved each of them before it was covered over. Thus, the houses were built according to the requirements of the health authorities of the County and according to the F.H.A. specifications.

Complainant Culver B. Dozier was 32 years of age, a graduate of the University of Tennessee, an architect and designing engineer, employed by Marr and Holman, Architects. He had worked for a number of concerns and had had some experience himself in developing sub-

divisions and in dealing with the F.H.A. He never saw and never talked to any of the defendant corporation's officers before he bought the property.

He was a personal friend of Russell Anderson, a young man employed as a real estate salesman by Dobson-Bainbridge Realty Company. Anderson had showed him a number of houses but had found none which suited him. Anderson showed him Lot 17 and the house which had been commenced thereon. It was only partially completed, and the septic tank had not been commenced. He looked at the lot, the foundation, walls and roof of the house, and liked it.

He said: "I looked at it, I liked it, and I bought it." He also said that there was no discussion at all between him and Anderson about any septic tank before or at the time he signed the contract. The contract was in the form of an offer by Dozier and was accepted by the Hawthorne Development Company.

The contract was in writing, stating the price as "$15,500.00, payable as follows: $5,000.00 to $6,000.00 cash, balance to be paid on 5% conventional loan, 20 years, or smaller cash payment if greater loan can be secured." The writing described the property as "Lot No. 17, Hillmont Drive, Nashville, Davidson County, Tennessee."

At the time of purchasing the property it was understood between Dozier and the agent that certain minor changes in the building would be made, and that these would be drawn up in writing and later agreed to, which was done. The contract stated that this was to be done and that the seller was to make the buyer a deed to the property before October 1, 1948.

After purchasing the property Dozier talked about the changes to Wessely, who had charge of the building, and

was shown the plans, and a copy of the specifications was prepared for him but he did not call for them. From time to time, as the house progressed, Dozier and Mrs. Dozier inspected it and saw the septic tank as it was being built. Pursuant to this written contract of August 21, 1948, the vendor, as has been stated, made the deed to complainants October 23, 1948.

The Chancellor dismissed the bill as to Condra, Bainbridge and Wessely, but held the Hawthorne Development Company liable to complainants for amounts they had paid on the property and on their note, less the reasonable rental value of the property during the period it was occupied by the Doziers, the net recovery in favor of the complainants against defendant corporation being $9,762.47 and the costs.

The decree further provided that upon payment of this recovery to complainants, their equity in the property would be divested out of them and vested in the Hawthorne Development Company, but that the indebtedness of complainants to the Prudential Life Insurance Company, and the lien securing the same, would remain undisturbed. The decree also ordered them to pay $350 attorneys' fees to solicitors for the Prudential Life Insurance Company.

Defendant Hawthorne Development Company prayed, was granted, and perfected a broad appeal and have assigned a number of errors.

Complainants prayed and perfected a limited appeal and have assigned errors, complaining that the Chancellor erred in dismissing the bill as to Condra, Bainbridge, and Wessely; in allowing any credit to appellant Hawthorne Development Company for the rental value of the property; and in declining to order the Hawthorne Devel-

opment Company and its officers to assume and agree to pay complainants' note secured by the trust deed.

Recurring to appellant Hawthorne Development Company's assignments of error, its first contention is that the Chancellor should have found that no statement and no representation was made to induce complainants to purchase the property, and that the Chancellor ought to have dismissed the bill upon this ground, which was the only ground of relief averred by the bill.

█ We think this contention must be sustained. As we have seen, the proof shows that complainant Culver B. Dozier bought the property and signed the contract of purchase before he ever saw Condra, Bainbridge, or Wessely, and before the house was completed and before the septic tank had even been commenced. He himself says that there was no discussion or statement between him and Anderson about any septic tank before or at the time he signed the contract to purchase.

The Chancellor did not find that there had been any statement or representation made to Dozier about the septic tank. He did find that after the contract was signed Wessely stated to Dozier that the house was being built in accordance with F.H.A. specifications, but the Chancellor, in the view he took, did not "deem the (this) representation material."

█ It is well settled that in order to constitute fraud or be a ground of rescission, there must not only be a representation as to an existing fact but that such representation must have been false, must have been relied on, and must have been so material that it determined the conduct of the party seeking relief. Georgia Marble Co. v. Standard Tile Co., 19 Tenn. App. 258, 263, 86 S. W. (2d) 429, 432; A. Landreth Co. v. Schevenel, 102 Tenn. 486, 52

S. W. (2d) 148; 55 Am. Jur., Vendor and Purchaser, Sec. 64, p. 535.

"Ordinarily, representations, statements, or promises concerning future events are not actionable even though they prove to be false [citing case]." Young v. Cooper, 30 Tenn. App. 55, 70, 203 S. W. (2d) 376, 383.

■ The statement of Wessely that the house was being built according to F.H.A. specifications was not false, but was true. Moreover, it could not possibly have served to induce Dozier to purchase the property because it was not made until after he had completed the contract to purchase. In Cooley v. East & West Ins. Co., 166 Tenn. 405, 412, 61 S. W. (2d) 656, 659, Chief Justice Green said:

"Representations by one of the parties to a contract cannot be relied on by the other party to avoid the contract unless such representations afforded a material inducement to the formation of such contract. This is true of insurance contracts as well as other contracts."

A reference to the opinion filed by the learned Chancellor shows that he did not grant relief upon the ground of false and fraudulent representations, the ground averred in the bill, but granted relief upon the ground of fraudulent concealment, not a ground alleged in the bill. This is clear from these excerpts from his opinion:

"It further appears from the record and the Court finds that Mr. Robert Condra, President of the defendant company, was notified prior to the development of the subdivision that the land was of poor porosity and because of this the septic tanks would likely not function efficiently and properly. This

information was given to Mr. Condra by Mr. Dick Thompson, Davidson County Sanitary Engineer.

\* \* \* \* \* \*

"In 55 Am. Jur., 554, it is stated in substance that if a vendor knows of circumstances likely to affect the health or safety of persons purchasing property, said vendor is bound to disclose the existence of same when he has knowledge thereof and has reason to believe that the purchaser does not have the knowledge, and that the means of said knowledge is not readily at hand."

And the Chancellor went on to say that from the information the President of this Company had received from Mr. Thompson, he should have known that the septic tanks in this area would likely give trouble unless such tanks were bolstered or aided by proper drainage fields; and that as a result of a lack of such field, an intolerable condition came into existence on the lot conveyed to complainants, which forced them to vacate their home.

It is clear that the learned Chancellor was here referring to the "*opinion*" which Mr. Thompson had expressed to Condra in February, 1946, because this is the only time it appears that Thompson ever communicated with Condra about this property. As we have seen, it was Thompson's opinion then that the land was of poor porosity and not well suited to building lots with septic tank disposal of sewage.

But that opinion was given more than a year before Condra became President of the Hawthorne Development Company, and more than a year before that company was organized as a corporation. That opinion was also expressed with reference to comparatively small lots then proposed. Obviously, it might be sound as to small lots

but unsound as to lots approximately the size of an acre.

As we have seen, a year or so later, when the new plan was proposed for the large lots, in accordance with Thompson's requirements, he changed the opinion he had had as to the soil and became convinced that it would be adequate for large building lots serviced by septic tank disposal of sewage. So, he approved the plan and gave the authority of the County Health Department for the location and installation of the septic tanks on the lots.

If this expert sanitary engineer, the official whose duty it was to determine the matter, was of the opinion that the soil would be adequate for the large building lots, it would seem that the vendor and its officers could safely follow that opinion. Wessely constructed a residence for himself on Lot 16 adjoining the lot purchased by complainants, was occupying it as his home, and had no trouble with his septic tank.

Condra never saw or talked to Dozier and never knew that he was contemplating the purchase of the lot. Condra had no *"knowledge"* that the septic tank would not function efficiently but evidently believed, as did Wessely, that it would function properly and give no trouble.

▇ Concealment or nondisclosure becomes fraudulent only when there is an existing fact or condition, as distinguished from a mere opinion, to be disclosed, and when there is a duty of disclosure upon the party having knowledge of such fact or condition. 3 Pomeroy's Equity Jurisprudence, 5th Ed., Secs. 901, 902, pp. 545-555; 23 Am. Jur., Fraud and Deceit, Secs. 77, 78, pp. 851-855; 55 Am. Jur., Vendor and Purchaser, Sec. 62, pp. 531, 532; Domestic Sewing Mach. Co. v. Jackson, 83 Tenn. 418; Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 42 N. E. (2d) 808, 141 A.L.R. 965, 967.

■ Ordinarily, no duty of disclosure exists except (1) where there is a previous confidential relation between the parties; (2) where it appears one or each of the parties expressly reposes a trust or confidence in the other; (3) or where the contract or transaction itself is intrinsically fiduciary and calls for good faith, as in cases of insurance contracts. Domestic Sewing Machine Co. v. Jackson, supra; 3 Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 902, pp. 550-555.

"The rule of *caveat emptor* generally applies to sales of land [citing authorities]." Smith v. Tucker, 151 Tenn. 347, 360, 270 S. W. 66, 69, 41 A. L. R. 830.

"In ordinary contracts of sales, where no previous fiduciary relation exists, and where no confidence, expressed or implied, growing out of or connected with the very transaction itself, is reposed on the vendor, and the parties are dealing with each other at arm's-length, and the purchaser is presumed to have as many reasonable opportunities for ascertaining all the facts as any other person in his place would have had, then the general doctrine already stated applies: no duty to disclose material facts known to himself rests upon the vendor; his failure to disclose is not a fraudulent concealment." 3 Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 904, p. 558.

If affirmative and fraudulent expressions of opinion cannot amount to fraud or justify a rescission, A. Landreth Co. v. Schevenel, supra; Young v. Cooper, supra, then certainly a mere nondisclosure of a matter of an opinion cannot amount to fraud or justify relief.

Counsel for complainants has cited Simmons v. Evans, 185 Tenn. 282, 206 S. W. (2d) 295. That case, however, is distinguishable on its facts from the case before us.

That was a case of the existence of a fact, as to which the vendor made an affirmative false representation.

The conclusion which we have reached makes it unnecessary for us to deal with other matters raised by the assignments of error of both parties and discussed by their able counsel.

It results that the Chancellor's decree must be reversed and complainants' bill dismissed as to defendant Hawthorne Development Company. But the case will be remanded to the Chancery Court in order that the receivership may be disposed of and that the Chancellor may direct the payment by complainants of the fee allowed by him to the solicitors of the Prudential Life Insurance Company. The costs of the cause are adjudged against complainants and the surety upon their cost bond and the surety upon their appeal bond.

Howell and Hickerson, JJ., concur.