Sylvia **SILVERS** et al., Appellants,

v.

**TTC INDUSTRIES, INC.,** a New York corporation, et al., Appellees.

No. 72–1291.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1972.

Decided Sept. 10, 1973.

Rehearing Denied Oct. 30, 1973.

John S. McLellan, Kingsport, Tenn., for appellants; D. Bruce Shine, Ferguson & Shine, Kingsport, Tenn., on brief.

Dick L. Johnson, Johnson City, Tenn., for appellees; Simmonds, Herndon, Johnson, Coleman, Brading & McKee, Johnson City, Tenn., on brief.

Before EDWARDS and CELEBREZZE, Circuit Judges, and WELLFORD,* District Judge.

WELLFORD, District Judge.

Plaintiffs-appellants in this complex litigation filed suit on October 29, 1969, in the Chancery Court in Unicoi County, Tennessee, seeking rescission of a reorganization plan which had become effective on January 14, 1969, respecting Armstrong Glass Co., Inc., (hereinafter referred to as Armstrong) a Tennessee corporation, then engaged in the manufacture of flat glass and glass specialty items at Erwin, Tennessee. The appellants, members of the Silvers family, and one Rapport [1] owned stock in Arm-

---

* Honorable Harry W. Wellford, United States District Court, Western District of Tennessee, sitting by designation.

1. Sylvia Silvers and Rapport, principal shareholders, owned, respectively, 660 shares and 450 shares of 1,450 issued and outstanding Armstrong shares. Rapport subsequently disclaimed any interest in the suit and was subsequently dismissed as plaintiff.

strong and had agreed to exchange this stock on a ratable basis for one-half of the defendants TTC Industries, Inc.,[2] a New York corporation's class A and common stock. The Armstrong stockholders pursued the suit for rescission of the transaction and an injunction on the grounds of misrepresentation and fraud in the inducement by reason of concealment of material facts as to TTC's financial condition and status by defendants-appellees Wilson and also Ellsworth and Norman Goldstein, major stockholders and officers in TTC, also a defendant-appellee. The reorganization involved formation of a successor wholly-owned subsidiary corporation to operate the Armstrong Tennessee glass facility with Jerome Silvers as Executive Vice-President (in effect, the principal operating officer as he had formerly been), Wilson as president and the Goldsteins Vice-Presidents; all of them, together with two TTC nominees serving on the Board of Directors with Rapport. Appellants claimed that prior to closing and effectuating the reorganization and merger of Armstrong into TTC that losses were incurred by TTC affecting its financial condition which were either concealed or not fully revealed after preliminary exchange of financial and operating information. They also contended that full disclosure of information concerning material of great adverse impact upon TTC came to them only after reorganization, and they sought and obtained an injunction in state court to prohibit appellees from interfering with Armstrong's business operations and to permit Armstrong to operate independently by realizing upon proceeds from its sales and operations apart from TTC's control, conditioned upon plaintiffs' execution of an injunction bond of $5,000.00. Thereafter, appellees re-

moved the cause to Federal District Court on grounds of diversity.

They sought to have the injunction dissolved, and after a hearing on November 18, 1969, the Court appointed Rex March as receiver to take charge of Armstrong assets and property and to continue business operations generally with an indemnity or security bond of $25,000.00 [3] required of plaintiffs and bond in like amount to be posted by the receiver. After receiving the first report of the receiver, the Court noted judicially a judgment pending in that Court against Armstrong aggregating nearly $50,000.00 in favor of American St. Gobain Corporation [4] and opined on December 9, 1969, that "only meticulous management of the affairs of this corporation by a receiver can result in its continued solvency." In January of 1970, on motion of the receiver, the Court ordered TTC (or later its subsidiaries) to pay the receiver approximately $95,000.00 [5] without prejudice to its or their continuing rights in the controversy.

The receiver in connection with ongoing business engaged Jerome Silvers, one of the original plaintiffs, as general manager of Armstrong, and Charles Silvers, another plaintiff [6] in Miami, as a salesman. In March, the receiver also reported that $80,000 to $100,000 would be needed to rebuild a furnace if Armstrong were to continue operating, and that it was in "very, very critical" financial position, whereupon the Court dissolved the injunction on the basis of changed circumstances and awarded some $13,000 in receiver and attorney fees.

Appellees thereafter amended their answer denying liability or alleged misconduct and asserting a $100,000 coun-

---

2. Herein referred to as TTC, a holding company having five subsidiaries including Armstrong.

3. The subject of later controversy as hereinafter explained.

4. American St. Gobain Corp. v. Armstrong Glass Co., 300 F.Supp. 416 (E.D.Tenn.

1969), 418 F.2d 571 (6th Cir. 1969), 434 F.2d 1216 (6th Cir. 1970).

5. $74,559.55 was alleged due from Top Trading Corporation and $20,544.00 from Ellsworth Goldstein, Inc., subsidiaries of TTC.

6. Charles Silvers is the husband of Sylvia and father of Jerome.

terclaim against appellants as cross-defendants for alleged breach of warranties under the same reorganization agreement. Prior to a hearing, TTC filed voluntary proceedings in 1970, in New York for bankruptcy.[7]

Armstrong began operations with assistance of a bond issue by the City of Erwin during 1967, and produced rolled flat glass which before that time was largely imported from eastern Europe. In 1968, TTC, then in the process of becoming publicly owned, contacted Armstrong (and appellants) with respect to serving as sales agent, negotiations culminating in a letter of intent as to merger and a sales agency arrangement in late 1968. Both companies, Armstrong and TTC, purported to have net worths in the range or neighborhood of $200,000. Appellants and their counsel, however, were made aware in November of 1968, of the fact that large prospective orders of products by Sears, Roebuck & Company, Montgomery Ward, and others were actually fictitious and had been fraudulently created by one of TTC's (or its subsidiary's) salesmen, and that this fraud would result in the loss of a great deal of contemplated profit by TTC (and would involve some loss on materials involved). Plaintiffs contended that the actual losses attendant to the fraud practiced upon TTC were substantial enough to wipe out its net worth and that this situation was not discovered until mid-1969.

Appellees' defense and counterclaim denied any misrepresentation on their part and asserted that appellants not only knew about this situation but also failed to disclose Armstrong's $50,000 judgment liability to American St. Gobain, and that this conduct violated their express warranties to appellees as to Armstrong's net worth.[8] Charles Sil-

vers admitted that he knew about the fraud perpetrated on TTC in November 1968, and that at least $120,000 would be lost in anticipated profit on fake orders of equipment.[9] He took the further position that appellees knew before reorganization about the patent violation situation and consent judgment (concerning American St. Gobain).

The District Court after consideration of the proof and record held that plaintiffs under the circumstances were not entitled to a rescission of the reorganization plan and agreement upon the grounds (1) that not all the indispensable parties to that agreement were before the court, (2) that both parties had actual knowledge of the matters purportedly misrepresented for a considerable period of time prior to conclusion of the transaction, and (3) that plaintiffs did not exercise reasonable diligence to learn the facts and consequences of the TTC fictitious order situation about which they were advised prior to closing.

Appellees, upon their motion, were thereupon awarded a $30,000 judgment against appellants and their surety although the court recognized that actual damages for wrongful suing out of the injunction "greatly exceeded the aggregate of $30,000". The court further held that appellees had been damaged by appellants' breach of warranty with respect to the $50,000 American St. Gobain judgment and made a further award in their favor in this amount.

Appellants assert they were denied a full, fair and meaningful hearing in these proceedings. There were, in fact, a number of hearings in the process of consideration of injunctive relief, motions, reports of the receiver, pre-trial matters and the merits of the controversy. Much proof was introduced by affidavits in support of the appellees' mo-

---

7. Gabriel S. Kaye, assignee for benefit of creditors of TTC, was substituted for TTC thereafter, in Chapter XI bankruptcy proceedings in New York subsequently transferred to the Tennessee District Court.

8. Armstrong's purported net worth dropped to approximately $29,500 without reflecting

the American St. Gobain judgment prior to reorganization, after losses experienced in 1967 and 1968.

9. He and other plaintiffs took the position that actual losses were represented to be no more than $20,000 during 1968, instead of the $200,000 actually ultimately sustained.

tion for summary judgment. The principal complaint was the court's exclusion of tendered proof by plaintiff with respect to the merger's impact upon Armstrong and the Silvers family and the extent of the TTC loss discovered during 1969, on the fraudulent scheme practiced upon it by its salesmen. Considering all of the proof offered by appellants, including that tendered and excluded by the trial judge as to fraud in the inducement, we are not persuaded that judgment against appellants on the rescission issue was clearly erroneous or that the court's holding is not supported by substantial evidence. Appellants concede that they were made aware of the fraud at or about the time TTC and the other appellees learned of it either in October or November of 1968. The full extent of the consequential loss may not have been revealed, but appellants have failed to demonstrate that appellees themselves even knew about the enormity of the affair before January 14, 1969.

■■■ "In order that there be actionable fraud, the representation must relate . . . ordinarily . . . to a past or existing fact, . . . and not to the future, or future events or occurrences. . . . " See 37 C.J.S., Fraud § 6, pp. 222, 223. CIA Estrella Blanca LTDA. v. S.S. Nictric, 247 F.Supp. 161 (D.Ore.1965) aff'd 368 F.2d 575 (9th Cir. 1966); Proie Bros. v. Proie, 301 F. Supp. 680, 683 (W.D.Pa.1968) aff'd 414 F.2d 1365 (3rd Cir. 1969). Fraud is not, again, ordinarily based upon erroneous conjectures as to future events even though a party acted in reliance thereon. Cumberland Portland Cement Co. v. R.F.C., 140 F.Supp. 739, 750 (E. D.Tenn.1953) aff'd 232 F.2d 930 (6th Cir. 1956), 37 C.J.S. Fraud § 11, p. 233. Appellants, their counsel and their auditor were all given access to TTC's, and subsidiaries', financial data for the two month period after knowledge of the fraud was known before the reorganization took place. Nothing was demonstrated by appellants to indicate that appellees averted inquiry or attempted to conceal books, records, or data pertaining to the prospective impact of the abortive sales transactions. The parties dealt at arm's length and the facts pertaining to the transaction were within the means of knowledge of appellants. That appellants may have acted under misapprehension of fact at the time of the reorganization occurred is not sufficient to sustain alleged fraudulent inducement under all the apparent circumstances. See the opinion of Chief Judge Murrah in Woodmont, Inc. v. Daniels, 274 F.2d 132 (10th Cir. 1959); Dozier v. Hawthorne Development Co., 37 Tenn.App. 279, 262 S.W.2d 705 (1953). See also Hannah v. Belger, 436 F.2d 96 (5th Cir. 1971). The truth or falsity of a purported misrepresentation should be determined as of the time they were relied on and acted on. "As a general rule, where the parties deal on equal terms, one who has failed to avail himself of means of knowledge readily within in his reach cannot complain of the other party's representations." 37 C.J.S. Fraud § 34, p. 278. Texas Tunneling Co. v. City of Chattanooga, 329 F.2d 402 (6th Cir. 1964); Classic Bowl, Inc. v. AMF, 403 F.2d 463 (7th Cir. 1968).

■■■ The Court acted within its bounds of discretion in allowing appellees to amend their answer and to assert a counterclaim "when justice requires." F.R.Civ.P., Rule 13(b), (f). Generally, courts have been liberal in granting such assertions of counterclaims under this rule. Wright & Miller, Federal Practice & Procedure, Vol. 6, Sec. 1430. Since appellants failed to establish a right of rescission and therefore improperly asserted rights for injunctive relief bringing about appointment of a receiver (who relied in considerable measure on appellants in operating Armstrong free of TTC's control), they were liable on their bonds for resulting and consequential damage. There was credible evidence to support a showing of substantial damage to Armstrong and therefore to appellees by reason of appellants' actions in bringing about an injunction

and the eventual appointment by the court of a receiver for Armstrong.[10] The record indicates that the court's order further provided, "upon the filing of the bond in the increased amount, *the present bond of the plaintiffs* (appellants) shall become further ineffectual." [11] (Emphasis ours.) Subsequently, the district court noted "to clarify any misunderstanding, this court required *an increase to $25,- 000* of the security for the payment of such costs and damages . . . " [12] (Emphasis ours.) The court had previously found the $5,000 bond required of appellants by the State Chancellor to be insufficient, when he ordered a security bond "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined herein".

This court cannot in the face of these orders affirm an award of $5,000 against the original surety on the $5,000 bond, and appellants' contentions in this respect are sustained.

Appellants contend also that the judgment of $50,000 rendered against it for breach of warranty on the counterclaim was clearly erroneous. On October 9, 1968, American St. Gobain Corporation and Armstrong Glass consented to the entry of a judgment restraining it from infringing a certain patent owned by American St. Gobain. Such consent judgment purported to terminate the controversy between Armstrong and American St. Gobain. The specific warranty alleged to have been breached is in the following terms:

"There are no actions, suits, or proceedings pending or, to the knowledge of Armstrong or transferors threatened, against Armstrong in any court . . . which, if successful, would give rise to a liability of Armstrong . . . Armstrong is not in default with respect to any order, writ, injunction or decree of any such court, agency or tribunal."

On February 7, 1969, American St. Gobain moved to have Armstrong adjudged in violation of the consent restraining order heretofore referred to. Armstrong was found by the court upon subsequent motion of American St. Gobain to have violated the terms of the consent judgment and this occurred while appellants were in control of Armstrong prior to the reorganization involving TTC on January 14, 1969. There was a factual controversy between the parties as to whether or not appellees knew about this litigation and the judgment against Armstrong and whether appellees knew or were advised of Armstrong's continuing violations. The existence of this situation placed a stain on appellants hand in seeking the extraordinary relief in equity denied them. There was evidence in the record in appellee Goldstein's affidavit and in appellees' original answer making an issue of this asserted breach of warranty on appellants' part. The findings of the court concerning breach of warranty and damages in the amount of $50,000 are not clearly erroneous and the judgment of $50,000 in favor of appellees is sustained.

The court below concluded that other damages to appellee "greatly exceeded" the aggregate sum of $30,000 which he considered to be the total of the two bonds then still in force. We have already concluded, however, that the $5,000 bond had been effectually discharged or released. Since there have been no findings of fact in the court's opinion delineating with clarity the basis, nor the extent, of damages actually suffered by appellee by reason of the wrongful suing out of the injunction by

---

10. Significant losses were sustained by Armstrong during the four months period of receivership beyond its condition of lack of capital, a factor aggravated by appellees' failure to pay to Armstrong $95,000 assertedly due on account.

11. Memorandum Opinion and Order filed November 18, 1969, Joint Appendix, p. 62.

12. Memorandum Opinion and Order filed December 9, 1969.

appellants, the cause is remanded to the court below for appropriate determination and findings on the issue of damages and liability therefor. Costs shall be assessed against plaintiffs-appellants.