IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 14, 2003 Session

## BRIAN & CANDY CHADWICK v. CHAD SPENCE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007720-01     Kay Robilio, Judge**

_____

**No. W2003-00931-COA-R3-CV - Filed February 11, 2004**

_____

This is an action for damages arising from the purchase of a residence. Purchaser sued seller for fraudulent misrepresentation and breach of contract, alleging that seller failed to disclose existing stucco and water damage, as well as termite infestation. Following a bench trial, the lower court entered judgment in favor of Defendant. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Kevin A. Snider, Germantown, TN, for Appellants

Harold D. Mangrum, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

This case arises from the sale of a stucco house located at 2514 Brotherwood Cove in Collierville, Tennessee. The initial owner, Chad Spence ("Defendant"), moved out of the house, leaving it vacant, in April of 2000. On April 14, 2000, Defendant hired Sue Reeves ("Ms. Reeves"), a realtor with Century 21 River Oaks, to assist him in selling the house. Due to the well-documented problems sometimes associated with stucco homes, Ms. Reeves arranged for Steve Anderson ("Mr. Anderson"), a home inspector, to examine the house on May 11, 2000. After conducting his examination, Mr. Anderson concluded that the stucco on Defendant's house was not installed to certification, resulting in some water damage to the walls. Mr. Anderson then drafted a report that contained these observations, as well as an estimate of $34,000 to bring the house up to certification, and gave the report to Ms. Reeves. A few days later, on May 14, a termite inspector from Womack Exterminators was brought in to examine the house for evidence of termite activity. The inspector,

James Hunt, found nothing to indicate the presence of termites and drafted a termite letter to that effect.

Later that summer, a potential buyer made an offer on the house, contingent on Defendant bringing the stucco up to certification. In response, Ms. Reeves procured the services of a stucco specialist, Lee Gallagher ("Mr. Gallagher"), to inspect the house and provide an estimate for the repairs necessary to achieve certification. Mr. Gallagher inspected the residence on August 10, 2000 and estimated that it would cost $32,735 to conduct the necessary repairs. After hearing this total, Defendant told Ms. Reeves that he was not prepared to fund such repairs, and he instructed her to counter with an "as is" offer. The prospective buyer declined the counteroffer and the house remained on the market. Ms. Reeves was then discharged by Defendant after these negotiations were unsuccessful.

Following the discharge of Ms. Reeves, Brian Chadwick (hereinafter "Mr. Chadwick" or, collectively with his wife, "Plaintiffs") learned of the Defendant's residence through a mutual friend of the two parties. Mr. Chadwick visited the house several times and had discussions regarding the property with Defendant on some of these occasions. Defendant maintains that these negotiations took place in mid-August of 2000, while Mr. Chadwick argues that it was nearly a month later. It is undisputed that the parties signed a contract of sale for the house, drafted by Mr. Chadwick's mortgage company, *dated* August 23, 2000, with no real estate agent involved in the contract. However, the parties disagree as to when the contract was actually signed, notwithstanding the effective date of the contract. Defendant contends that the contract was signed on August 23, while Mr. Chadwick maintains that the contract was actually executed in September and backdated to August 23. This disagreement over the date of signing is inextricably tied to a related issue: the role played in these events by a second realtor hired by Defendant, after the effective date of the contract. The parties agree that, on September 7, 2000, Defendant hired Chet Whitsitt ("Mr. Whitsitt") of Crye-Leike Realtors to list the property at issue. Defendant argues that he procured Mr. Whitsitt's service after the date the contract was actually signed and that he did so because Mr. Chadwick expressed doubt as to his ability to qualify for a mortgage and close on the property. Mr. Chadwick, however, maintains that Mr. Whitsitt was involved in these proceedings prior to the actual signing of the contract, which was in late September, because Defendant had no contract on his house as of early September and was, naturally, in need of a realtor's services. Mr. Chadwick argues that the parties reached an agreement without the aid of Mr. Whitsitt, who gracefully agreed to step out of the way so that the parties would not be charged a commission. Mr. Chadwick further contends that the contract was backdated, to a date before Mr. Whitsitt's involvement, as a precaution against any legal difficulties that might arise from the absence of a commission in the contract.

The Plaintiffs argue that, in the course of evaluating the house prior to signing the contract, they relied upon a flyer prepared by Mr. Whitsitt on behalf of Defendant. The flyer boldly stated that the house was "stucco inspected" and that there was a current termite contract on the house with Womack Exterminators. Mr. Chadwick maintains that these representations led him to believe that the house was stucco certified and without termites. The record indicates that the house was, indeed, stucco inspected, though it was not stucco certified. It is also undisputed that there was no termite

contract on the house, only a termite letter by Womack Exterminators stating that the house showed no visible signs of termite damage as of May 14, 2000. Defendant argues that any mistakes in the flyer are irrelevant, because the Plaintiffs could not have relied upon them in signing the contract. This is because the contract was signed on August 23, more than two weeks prior to the creation of the flyer.

The Plaintiffs did not close on the house until December 29, 2000. The record shows, however, that Defendant allowed the Plaintiffs to move into the residence roughly a month before closing. During that time, the Plaintiffs had unfettered access to the entire house and the opportunity to have a professional inspection of the residence for any faults. The Plaintiffs chose not to have an inspection performed. After the closing was completed, but before the Plaintiffs' funds were disbursed, a second termite letter was obtained that declared the house free of visible termite activity.

In April of 2001, the Plaintiffs experienced an explosion of termite activity in their residence. This termite infestation allegedly prompted the Plaintiffs to investigate the overall condition of the house. It was only at this time, according to the Plaintiffs, that they learned of the stucco and water damage to the house. On December 28, 2001, the Plaintiffs filed suit against Defendant, alleging misrepresentation and breach of contract. Specifically, the Plaintiffs alleged that: Defendant failed to provide them with a property disclosure statement as required by the Tennessee Residential Property Disclosure Act; Defendant withheld material facts by failing to disclose the existence of the Gallagher report; and Defendant affirmatively misrepresented the condition of the house both in oral statements and in the flyer prepared by Mr. Whitsitt. Defendant responded that: he discussed the problems listed in the Gallagher report with Mr. Chadwick, who said he would attend to the problems after the sale; the Plaintiffs never relied upon the flyer prepared by Mr. Whitsitt; the Plaintiffs themselves had the contract drafted with the "as is" clause, without any representations regarding the condition of the property; and the selling price of the house was lowered to account for the stucco and water damage the Plaintiffs would be inheriting. After conducting a bench trial from January 13-15, 2003, the trial court found that Defendant had neither misrepresented the condition of the property nor breached the parties' contract of sale. The Plaintiffs then timely filed the instant appeal challenging the judgment of the trial court.

## Issues

The Plaintiffs raise the following issues for our consideration:

I.      Whether the trial court erred in failing to find that the Defendant violated the Tennessee Residential Property Disclosure Act.
II.     Whether the trial court erred in failing to find that the Defendant fraudulently misrepresented the true condition of the property at issue and/or breached the parties' contract of sale for the property.
III.    Whether the trial court erred in finding that the Plaintiffs failed to demonstrate ascertainable damages.

**Standard of Review**

This case was tried by the lower court sitting without a jury. We, therefore, review the trial court's conclusions of law under a *de novo* standard, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). With respect to the trial court's findings of fact, our review is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569.

**Law and Analysis**

**I. Tennessee Residential Property Disclosure Act**

We will first address the Plaintiffs' contention that the lower court erred in failing to find that the Defendant violated the Tennessee Residential Property Disclosure Act ("TRPDA"). The TRPDA, enumerated in Tenn. Code Ann. § 66-5-201 to -210 (2003), requires an owner of residential property to provide a property disclosure statement to a purchaser. Tenn. Code Ann. § 66-5-202(1). This disclaimer statement must include notice of any material defects in the property of which the owner is aware. *Id*. The TRPDA does allow an owner to issue, in the alternative, a disclaimer statement stating that the owner makes no representations or warranties as to the condition of the property. Tenn. Code Ann. § 66-5-202(2). However, a disclaimer statement is allowed only where the purchaser waives the disclosure statement described above. *Id*.

In the present case, it is undisputed that the Defendant failed to provide the Plaintiffs with a residential property disclosure statement. It is likewise undisputed that the Plaintiffs never waived their right to such a disclosure statement. Nevertheless, the trial court did not err when it failed to specifically address this violation of the TRPDA. This is because such a violation creates no independent cause of action on behalf of the purchaser. Tenn. Code Ann. § 66-5-208(b). Instead, an owner who fails to provide a disclosure statement is simply "subject to any other cause of action available in law or equity against an owner for misrepresentation or failure to disclose material facts regarding the subject property." *Id*. The Defendant's violation of the TRPDA in the instant case is, therefore, subsumed within the overall claims of misrepresentation and breach of contract. Accordingly, when the trial court disposed of those two causes of action in its order, it necessarily disposed of the TRPDA violation, as well. The lower court had no duty to separately address the TRPDA violation as part of its order.

**II. Fraudulent Misrepresentation and Breach of Contract**

We will next consider the Plaintiffs' assertion that the trial court erred in failing to find that the Defendant fraudulently misrepresented the true condition of the property at issue and/or breached the parties' contract of sale for the property.

## A. Fraudulent Misrepresentation

The Plaintiffs allege that the Defendant misrepresented the true condition of the property by failing to disclose the water and stucco damage, as well as possible termite damage, that was revealed in expert reports prior to the sale. In order for this alleged misrepresentation to constitute fraud, the misrepresentation: "(1) must have been a representation as to an existing fact; (2) must have been false; (3) must have been relied upon; and (4) must have been so material that it determined the conduct of the parties seeking relief." *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991) (citing *Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705, 709 (Tenn. Ct. App. 1953)). At trial, the parties hotly contested whether Defendant disclosed material information on the condition of the property, such as the $32,750 stucco repair estimate given in the Gallagher report in early August of 2000. They also contested whether the Plaintiffs relied upon the representations in the Whitsitt flyer that the property was "stucco inspected" and under a current termite contract.

Due to this conflict over the facts underlying the case, the trial court's ruling is necessarily predicated upon its assessment of the credibility of testimony presented at trial. Regarding a trial court's assessment of credibility, this Court has held that:

> When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id., In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

*Mach. Sales Co., Inc. v. Diamondcut Forestry Prod., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). The trial court was presented with credible testimony to support a finding that the Plaintiffs were not only provided sufficient notice of the property's condition by Defendant, but also afforded ample opportunity to have their own inspection performed. In light of the importance of witness credibility in this case, and our deference to the trial court's assessment thereof, we cannot say that the lower court committed error when it found that the Plaintiffs failed to establish their claim of fraudulent misrepresentation.

## B. Breach of Contract

In their brief, the Plaintiffs allege that the trial court erred in failing to find that the Defendant breached the parties' contract of sale for the property at issue. However, the Plaintiffs then fail to provide any specific argument or caselaw in support of this contention. Instead, they aver that "these same misrepresentations and/or nondisclosures [that allegedly give rise to the fraudulent

misrepresentation claim] are a breach of the parties agreement . . . ." Despite this paucity of support, we will, nevertheless, explore the Plaintiffs' claim.

This Court has held that "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Craft v. Forklift Sys., Inc.*, No. M2002-00040-COA-R3-CV, 2003 WL 21642767, at *2 (Tenn. Ct. App. July 14, 2003) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, 1998 W.L 960287, at *3 (Tenn. Ct. App. Feb. 2, 1998) (citing *LifeCare Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996))). In the instant case, it is undisputed that a contract of sale for the property exists. The issue, then, is whether Defendant committed some act that qualifies as nonperformance amounting to a breach of the contract. The Plaintiffs argument is grounded upon the theory that Defendant's alleged failure to disclose the existing damage to the property somehow violates the contract of sale. This theory necessarily implies that the contract contains some guarantee regarding the condition of the property at the time of the sale. The plain language of the contract, however, does not contain any such provision. To the contrary, the contract states that the property "shall be conveyed 'AS IS' with no warranty whatsoever as to Property condition." Such a clause is valid and enforceable, absent a showing that the contract was obtained by some form of fraudulent misrepresentation or concealment. *See, e.g., Edmondson v. Coates*, No. 01-A-01-9109-CH000324, 1992 WL 108717, at *8 (Tenn. Ct. App. May 22, 1992) (citing *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)). As the Plaintiffs were unsuccessful on their claims of misrepresentation and concealment, it inescapably follows that the "as is" clause of the contract is valid and enforceable. Therefore, the risk of loss occasioned by virtue of the condition of the property is shifted to the Plaintiffs, whose claim for breach of contract must fail. *See Memphis Zane May Assocs. v. Prudential Ins. Co. of America*, No. 02A01-9208-CH-00233, 1994 WL 577449, at *3 (Tenn. Ct. App. Oct. 21, 1994) (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 554 (Tenn. Ct. App. 1991)).

Our holding on the Plaintiffs' claims of misrepresentation and breach of contract preclude an award of damages. As such, we decline to address the Plaintiffs' final issue on appeal, concerning the ascertainment of damages.

### Conclusion

For the foregoing reasons, we affirm the judgment of the lower court. Costs of this appeal are taxed to the Appellants, Brian and Candy Chadwick, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE