WILLIAM H. BUFORD and wife,   )
ROSALYN BUFORD,               )
                              )
        Plaintiffs/Appellants,   )        Appeal No.
                              )        01-A-01-9806-CH-00325
v.                            )
                              )        Davidson Chancery
MARGIE M. CUNNINGHAM,         )        No. 96-2887-I
                              )
        Defendant/Appellee.   )
                              )

FILED

May 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CHANCERY COURT FOR
DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE


THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


KIRK C. WAITE
Mooreland Mansion
7100 Executive Center Drive
P. O. Box 1966
Brentwood, Tennessee  37024-1966
        ATTORNEY FOR PLAINTIFFS/APPELLANTS


DANIEL L. WISCHHOF
Wischhof & Allen
Glancy Square, Suite 207
110 Glancy Street
Goodlettsville, Tennessee  37072
        ATTORNEY FOR DEFENDANT/APPELLEE


REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE

# OPINION

This appeal concerns a suit by appellants against appellee asserting fraud and misrepresentation in the sale of a house.

Margie M. Cunningham, a 72 year old widow, owned a house and lot located at 6036 Cane Ridge Road, Antioch, Davidson County, Tennessee. On September 18, 1995, she listed her property for sale with Barnes Real Estate Services through its affiliate broker, Rick Messick. At the time she listed her property for sale she caused to be completed and signed a Tennessee Residential Property Condition Disclosure Form as required by Tennessee Code Annotated section 66-5-201, et seq. Among the questions in this disclosure form was ". . . are you (seller) aware of any of the following? . . . 10. Flooding, drainage or grading problems" to which question Mrs. Cunningham responded "no".

On September 28, 1995, William H. Buford and wife Rosalyn Buford executed an offer to purchase the property and acknowledged receipt of the disclosure form.

In May of 1995, Mrs. Cunningham had been informed by Cook's Pest Control that there was water under the house. In order to correct the water problem she had Cook's Pest Control install a vapor barrier under the house. During the September 1995 negotiations for the purchase of the house, Mr. Buford noticed water standing on the plastic vapor barrier under the house near the entrance to the crawl space.

At this point in their relationship, the terms of the contract between the parties and the sequence of events leading up to the October 31, 1995 closing become vital. The offer of Mr. and Mrs. Buford, dated September 28, 1995, was made on a copy of the "Contract for Sale of Real Estate" which was a printed form supplemented by handwritten additions thereto as indicated infra. The pertinent provisions of the offer by the Bufords are as follows:

12.	CONDITION OF PREMISES:  The Seller warrants that the * * * improvements, including * * * plumbing (including water heater, wells and septic system) * * * shall be in good repair and working order when Buyer closes this sale.  Buyer has the privilege and RESPONSIBILITY to inspect these items prior to closing, at Buyer's expense, and any repairs required to be made prior to closing shall be made by Seller at Seller's expense.  CLOSING OF SALE CONSTITUTES ACCEPTANCE OF THESE ITEMS BY BUYER, AND SELLERS, AGENTS OR BROKERS SHALL HAVE NO LIABILITY THEREAFTER.

13.	REPAIRS/HOME INSPECTION. * * * Purchaser does (X) desire to have a Professional Inspection of house. * * * Sale conditioned upon Purchaser receiving an acceptable report from inspector and if purchaser finds the report unacceptable then purchaser shall give Seller notice of unacceptable conditions and shall give seller opportunity to make the necessary repairs or contract becomes null and void. [1] * * * *SELLERS REPAIRS ON ITEM 12, 13, 22 NOT TO EXCEED 1,000.00.*
* * *

15.	SELLER REPRESENTATIONS. Seller represents, to the best of their knowledge, that:  * * * (b)  The property has not been damaged or affected by flood, storm, or run-off.  * * * The determination by Buyer that any of these matters is in fact materially untrue shall entitle Buyer to rescind this contract and receive refund of the Earnest Money or to keep the contract in force and accept the Property with such exceptions.  Seller shall have no responsibility for these matters after closing.
* * *
21.	ENTIRE AGREEMENT. This instrument contains the entire agreement between the parties and no addition deletion or modification hereto shall be effective unless reduced to writing and signed by both parties.  There are no oral or other collateral conditions, agreements, or representations, all such having been incorporated and resolved into this agreement. Buyer has not relied on any other oral or written representations, and except as otherwise specified herein, this property is purchased "AS IS" and neither Seller nor Agent makes or implies any warranties as to the condition of the premises, except as provided herein.

Items 22 and 23 are entitled "Miscellaneous" and "Addendum(s)"

---

[1]This last sentence is handwritten and initialed by "M.C." (Margie Cunningham).

respectively.  Under item 22 "Miscellaneous" appears the following handwritten provision initialed by Mrs. Cunningham:  "Water and moisture problem in crawl space and under to be corrected."

Item 23 "ADDENDUM(S)" contains the following handwritten provision with an arrow reference back to item 22 to wit:  "Sellers to correct water/moisture in crawl space and Buyer to sign at closing acceptance of this item."  This provision in paragraph 23 is likewise initialed by Margie Cunningham.

Mrs. Cunningham signed her acceptance of the Buford offer on September 29, 1995 with the purchase price being $226,000.

The record is not completely clear as to exactly when these handwritten provisions of the contract initialed by Margie Cunningham were put on the contract, though one would assume the date to have been September 29, 1995. At any rate, the provisions were clearly in the contract at the time the parties closed the transaction on October 31, 1995.

The Bufords engaged The Home Team Inspection Services to inspect the house pursuant to their contractual right.  This inspection was conducted October 5, 1995, and a written report to the plaintiffs was issued the following day.  This report provided in part:

> GENERAL DESCRIPTION:  * * * The home was situated on a lightly sloped lot.  The general grade around the home appeared to be adequate to direct rain water away from the foundation.  * * *
>
> FLOOR STRUCTURE: * * * Note:  Water was entering the front foundation wall where the plumbing and wiring to the well penetrate the foundation.  This area should be seal/pointed and the foundation vents left open so as to allow the crawl space to air out.  Moisture was also present on the concrete blocks under the front porch.  This may have been the result of the earlier heavy rains from the tropical storm Opal.
>
> CRAWL SPACE:  The crawl space was accessible at the time of the inspection.  The crawl space was not dry at the

time of the inspection. The moisture appeared to be the result of water entering through the electrical conduit going to the well in the front yard. There were no other defects observed at the time of the inspection. * * * Recommendation: The electrical conduit should be properly sealed and the hole in the foundation wall (for the conduit and water supply lines), should be sealed.

After receiving the report from The Home Team Inspection Service, Mrs. Cunningham employed a Mr. Nash to do the repairs recommended by the appellants' inspector. Prior to closing, Mr. Denny, a realtor representing the Bufords, informed them that the recommended repairs had been accomplished. Mr. Nash delivered confirming documentation directly to the Bufords. Without further inquiry or further inspection, the Bufords chose to close the purchase as scheduled and signed a written form accepting the property in its state at that time.

Mr. Buford testified that after the closing on October 31, 1995, prior to the transfer of possession, he attempted to enter the crawl space under the house for further inspection. The crawl space door was locked and Mrs. Cunningham did not have a key. It is admitted by all parties and clearly established by the undisputed record that finding of fact number 12 by the trial court is in error. This finding states: "The defendant prevented plaintiffs from inspecting the crawl space under the house prior to the closing of the transaction."

The evidence not only preponderates against this finding of the trial court but indeed, the evidence is conclusive that the effort by Mr. Buford to enter the crawl space actually occurred after the closing and within the 19 day period between the closing of the transaction and the time the Bufords actually took possession of the property.

After the plaintiffs took possession of the property in November 1995 they discovered water standing on the vapor barrier and under the vapor barrier in the crawl space.

Plaintiffs then employed various contractors to inspect the property, make estimates and present plans for alleviating the water problem.

Plaintiffs claim damages in diminution of value of the property of $15,000.

The above recitation of fact essentially parallels the finding of the chancellor except as to the erroneous finding relative to number 12 discussed above.

The chancellor made the following conclusions of law:

1.   The agreement of the parties, in the contract for the sale of the property, relating to the correction of the water problem under the house is a valid and binding agreement among the parties.

2.   The defendant paid Nash Home Maintenance $265.00 to repair the water problem.  However, the water problem was not corrected.

3.   The defendant's liability for the correction of the water problem, as provided in the contract for the sale of the property is not to exceed $1,000.00.

4.   The incorrect statements made by the defendant on the Tennessee Residential Property Condition Disclosure form, with respect to the condition of the property as to flooding, drainage, or grading problems were effectively deleted by the parties agreement in the contract for the correction of the water problems.

Judgment was rendered in favor of the plaintiff in the amount of $1,000 and costs.

Plaintiffs appealed this limited judgment.  The defendants sought complete reversal of the award, or, in the alternative, credit for the $265 paid to Nash Home Maintenance in seeking to correct the water problem.

We respectfully disagree with the chancellor's finding that the defendant is liable to the plaintiffs in the amount of $1,000 because of the contract provisions.  The suit is for fraud and misrepresentation.  The chancellor

made no findings as to either fraud or misrepresentation, and no finding as to reasonable reliance.

An action for fraud requires an intentional misrepresentation of a material fact, knowledge of the representation's falsity and an injury caused by reasonable reliance upon the representation. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. App. 1992).

In order to prevail in a suit for negligent misrepresentation the plaintiffs must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information. *Merriman v. Smith*, 599 S.W.2d 548, 556-57 (Tenn. App. 1979).

This court has held:

> In order to succeed in any action based upon fraudulent or negligent misrepresentation, the plaintiff must prove that it relied justifiably on the defendant's statements. *Graham v. First American National Bank*, 594 S.W.2d 723, 725 (Tenn.Ct.App.1979); *Southern States Development Co. v. Robinson*, 494 S.W.2d 777, 782 (Tenn.Ct.App.1972); and *Dozier v. Hawthorne Development Co.*, 262 S.W.2d 705, 709 (1953).

*Lambdin v. Garland*, 723 S.W.2d 953, 956 (Tenn. App. 1986).

Given the true sequence of events and the plain provisions of the contract between the parties, as a matter of law, plaintiffs cannot now establish reliance on the assertion by Mrs. Cunningham in the Tennessee Residential Property Condition Disclosure document that she was not aware of any ". . . flooding, drainage, or grading problems". The record before this court clearly shows that plaintiff's were aware of the problems and attempted to provide for their remedy.

Plaintiffs then, with full knowledge of the crawl space water problems,

thus disclosed, and without assurance of complete repair, chose to go ahead with the closing of their purchase of this house.

Their voluntary election to close the contract, armed as they were with knowledge of the crawl space water problem, was an election that is binding upon them. The record in this case supports neither fraud nor negligent misrepre-sentation and further shows no reasonable reliance by plaintiffs on any statements made by the defendant.

The judgment of the trial court is reversed and the case is dismissed at the costs of appellants.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE