Wayne F. LAMBDIN, d/b/a Garland-Hensley Lambdin Funeral Home, Plaintiff/Appellant,

v.

Mrs. Jennie B. GARLAND, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 5, 1986.

Permission to Appeal Denied by Supreme Court Feb. 2, 1987.

James L. Bass, Bass & Bass, Nashville, for plaintiff/appellant.

Andrew B. Frazier, Jr., Frazier & Whitworth, Camden, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves the sale of a funeral home and an affiliated burial association. The buyer, alleging that the owner had misrepresented the condition of the business, filed an action in the Chancery Court for Humphreys County seeking to rescind the contract. After a bench trial, the trial court found in favor of the seller and dismissed the complaint. This Court remanded the buyer's first appeal without reaching the merits because the order appealed from was not final. *Lambdin v. Garland,* App. No. 83–458–II (Tenn.Ct.App. filed Dec. 4, 1984). On the remand, the trial court again found for the seller. The buyer has again appealed. He asserts that the trial court erred by finding that the seller had not made misrepresentations during the negotiations leading to the sale of the funeral home. We affirm the judgment of the trial court.

## I.

Mr. O.A. Garland operated the Garland-Hensley Funeral Home in Waverly for many years. He also operated a burial association known both as the Garland-Hensley Mutual Burial Association and as the Peoples' Mutual Burial Association as part of this business. His wife, Jennie B. Garland, was a school teacher. While she helped occasionally at the funeral home, she did not take an active role in the business. Mr. Garland died in March, 1965. Mrs. Garland continued to operate the funeral home with the help of her husband's employees. However, she soon decided to sell the business because operating it was too much for her.

Mr. Wayne Lambdin was familiar with the operation of funeral homes. He learned that the Garland-Hensley Funeral Home was for sale in July, 1965 while on a trip to Tennessee. He met with Mrs. Garland and her lawyer on two occasions to negotiate the terms for the sale of the business. Mrs. Garland and her lawyer permitted Mr. Lambdin to examine the funeral home's current business records during these negotiations.

Mr. Lambdin decided to purchase the funeral home and burial association based upon his discussions with Mrs. Garland and his own examination of the business records. Thus, on August 21, 1965, the parties executed a written agreement wherein Mr. Lambdin agreed to purchase the businesses by assuming their current obligations and by paying the balance of the purchase price in installments over fifteen years. The parties also executed a promissory note and security agreement contemporaneously with their execution of the agreement of sale.

Mr. Lambdin moved his family to Waverly from the outskirts of Atlanta and began to operate the funeral home. The business was not as prosperous as he anticipated. He was conducting fewer funerals than he expected to conduct, and he was encountering problems with the operation of the burial association. These problems took two forms. First, he discovered that many association members were calling upon him to provide funeral merchandise without also using his funeral home to provide a complete funeral. Second, state regulatory authorities informed Mr. Lambdin in late 1967 that the association agreements issued after 1955 violated state law. Thus, he found that he was losing money because he was required to make cash payments to the association members. Moreover, he was losing the profits he expected to make from selling merchandise and services that were not covered in the association agreement.

When his business began to suffer, Mr. Lambdin was unable to make the payments to Mrs. Garland required by the August 21, 1965 note and security agreement. Mrs. Garland's lawyer threatened to commence collection proceedings on two occasions in late 1967. In February, 1968, Mrs. Garland attempted to assist Mr. Lambdin by rear-

ranging his schedule of note payments. Mr. Lambdin's fortunes did not improve.

Finally, in June, 1969, Mr. Lambdin filed this action seeking to invalidate his contract with Mrs. Garland. His action languished in the trial court for over fourteen years before it finally came to trial in August, 1983. The trial court eventually determined that Mr. Lambdin had failed to prove that Mrs. Garland had made any misrepresentations during the course of their negotiations in 1965.

## II.

Mr. Lambdin's appeal is based upon his assertion that the evidence does not support the trial court's conclusion that he failed to prove his claims of fraudulent or negligent misrepresentation. When the evidentiary basis of a trial court's decision is attacked, Tenn.R.App.P. 13(d) requires this Court to review the evidence *de novo* with the presumption that the trial court's findings of fact are correct. The trial court's decision can be set aside only if it is based upon an error of law or if its findings of fact are not supported by a preponderance of the evidence. *Coffman v. Washington County Beer Board,* 615 S.W.2d 675, 677 (Tenn.1981) and *Willis v. Smith,* 683 S.W.2d 682, 687–88 (Tenn.Ct.App.1984). Thus, a trial court's opinion on fact questions is entitled to great weight on appeal. *Reeves v. Olsen,* 691 S.W.2d 527, 531 (Tenn. 1985). We have concluded that the evidence does not preponderate against the trial court's opinion.

Mr. Lambdin asserts that Mrs. Garland made two material misrepresentations concerning the funeral home business during the course of their negotiations. The first misrepresentation was that the Garland-Hensley Funeral Home conducted sixty to seventy funerals each year. The second misrepresentation was that the burial association had over 5,000 active members. Mrs. Garland denied making these statements. She testified that she was unaware of the details of the business because she had always looked to her husband to operate the funeral home.

Mrs. Garland also testified that all the information concerning the business of the funeral home and the burial association was contained in the records that Mr. Lambdin had an opportunity to examine before he bought the business. Mr. Lambdin conceded that he examined these records prior to the transaction but asserted that he failed to understand the significance of some of the information until after the sale had been completed.

The company's records concerning the funeral home business were contained in ledger books. Entries were made for each funeral conducted and for each funeral for which the funeral home only provided merchandise in accordance with the burial association agreement. The funerals for which only merchandise was provided were indicated by the notation "furnished by burial association." These records showed that the funeral home had been involved in 39 funerals in 1961, 69 funerals in 1962, 89 funerals in 1963, 66 funerals in 1964, and 25 funerals between January and August, 1965.[1] Mr. Lambdin stated that he did not understand that the "furnished by burial association" notation meant that the funeral home had provided only the merchandise and not the entire funeral. He also stated that he did not ask for any clarifications concerning the company records during his negotiations with Mrs. Garland.

After hearing this proof, the trial court concluded:

> The Court believes that the most important feature of the preliminaries to the purchase of the business by Mr. Lambdin was the fact that Ms. Garland gave him access to all their books. The Complainant states that he did not see in the books the errors and discrepancies in the partial pay for funerals which gave rise to his problems, he did have the opportunity to ascertain these matters and to

---

1. The records indicated that 6 of the 1961 funerals, 15 of the 1962 funerals, 24 of the 1963 funerals, 20 of the 1964 funerals, and 5 of the 1965 funerals were ones marked "furnished by burial association."

ask questions if he chose to from the selling party. Mr. Lambdin had the opportunity to determine all of the financial elements of this business prior to its purchase, or at least he was afforded the opportunity to make this determination and no one denied him access to any details.

In order to succeed in any action based upon fraudulent or negligent misrepresentation, the plaintiff must prove that it relied justifiably on the defendant's statements. *Graham v. First American National Bank,* 594 S.W.2d 723, 725 (Tenn.Ct. App.1979); *Southern States Development Co. v. Robinson,* 494 S.W.2d 777, 782 (Tenn.Ct.App.1972); and *Dozier v. Hawthorne Development Co.,* 37 Tenn.App. 279, 289, 262 S.W.2d 705, 709 (1953). The trial court found that Mr. Lambdin did not rely upon any statements that might have been made by Mrs. Garland because he had examined the funeral home's business records. The evidence does not preponderate against this decision.

### III.

For the reasons stated herein, the judgment of the trial court is affirmed, and the case is remanded for any proceedings deemed necessary. The costs of this appeal are taxed to Wayne Lambdin and his surety for which execution, if necessary, may issue.

TODD, P.J., (M.S.), and ALLEN R. CORNELIUS, Jr., Special Judge, concur.