IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 7, 2010 Session

## ENGLISH MOUNTAIN RETREAT, LLC, ET AL. v. SUSANNE CRUSENBERRY-GREGG, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-471-07     Harold Wimberly, Jr., Judge**

_____

**No. E2009-02148-COA-R3-CV - FILED SEPTEMBER 21, 2010**

_____

Plaintiffs purchased property insurance from defendants. The insured building was destroyed by a fire and plaintiffs received the full coverage limit. Nonetheless, plaintiffs sued defendants claiming that the building was under-insured and that they relied on the defendants' negligent advice. A jury trial occurred and after the close of plaintiffs' proof, defendants moved for a directed verdict on all issues. The trial court granted defendants' motion and dismissed plaintiffs' complaint. Plaintiffs appeal. We find that a directed verdict is inappropriate because plaintiffs presented sufficient facts for a jury to decide liability. Therefore, we reverse the trial court's order and remand for a full trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Brian C. Quist, Joanna R. O'Hagan, and Ryan E. Jarrard, Knoxville, Tennessee, for the appellants, English Mountain Retreat, LLC and G.E.R. Management, LLC.

Brad A. Fraser and Ryan C. Dreke, Knoxville, Tennessee, for the appellees, Susanne Crusenberry-Gregg and the Assurance Center.

**OPINION**

**I. FACTUAL BACKGROUND**

G.E.R. Management, LLC ("G.E.R.") owns real property and improvements located on English Mountain, Sevier County, Tennessee. G.E.R.'s tenant, English Mountain Retreat,

LLC ("English Mountain") operates an alcohol and drug treatment facility at that location. Richard Kahn is the sole owner of G.E.R. and co-owner of English Mountain.[1]

G.E.R. purchased English Mountain in November 2003 for $1.16 million. English Mountain consists of 27 acres of land, tennis courts, a pool, a golf course, and various buildings including, but not limited to: condominiums, a restaurant, and a main administration building. Mr. Kahn and the seller agreed at the time of purchase that the seller would carry the mortgage payments and Mr. Kahn would pay the existing insurance premiums; this arrangement lasted for about two years. After making improvements to the property and hiring a full-time employee on site, Mr. Kahn decided to update the insurance for the property. He then contacted Susanne Crusenberry-Gregg ("Ms. Gregg"), an insurance agent for the Assurance Center (collectively "Defendants") about purchasing insurance. Ms. Gregg is licenced in the State of Tennessee as a property and casualty insurance sales producer and is an accredited advisor in insurance.

Ms. Gregg made two visits to English Mountain. On her initial visit, she spent hours touring the facility, taking photographs, and keeping notes. Ms. Gregg's purpose for the initial visit was to identify the property's exposures to liability and gather information for insurance recommendations. During her second visit, she presented a proposal with her recommendations of the insurance needs for the property. Those recommendations included different coverage limits for the various buildings located on the facility. The total premium for the recommended coverage was $33,305. After the presentation, Mr. Kahn tendered a check for the down payment, made some changes to the coverage, and eventually executed an insurance policy. The insurance policy contained commercial property coverage, commercial general liability coverage, and commercial inland coverage. The insurance policy's premium totaled $24,196.[2]

In April 2007, the main administration building was completely destroyed by a fire. The building was insured for replacement cost coverage with a limit of $450,000 plus inflation guard. Because the building was a total loss, Plaintiffs were issued a check for $457,200 – the total of the policy limit with the increase for inflation.

Thereafter, Plaintiffs filed suit against Defendants alleging negligent misrepresentation and vicarious liability. In their Amended Complaint, Plaintiffs claimed

---

[1]We will refer to G.E.R. and English Mountain as "Plaintiffs" collectively.

[2]The policy was initially provided through Auto-Owners Mutual Insurance Company. However, when English Mountain became a drug and alcohol treatment facility, Auto-Owners did not renew the policy, and Lloyd's of London issued a new policy for English Mountain.

that Ms. Gregg failed to "properly measure and or value the building," and as a result, the building was grossly under-insured. Plaintiffs further claimed that the cost to replace the destroyed administration building would be at least $1,250,000 and that they are damaged in excess of $750,000.

A jury trial began on September 14, 2009. At the close of Plaintiffs' proof, Defendants moved for a directed verdict. The trial court granted the motion. Plaintiffs filed a timely appeal.

## II.  ISSUES

Plaintiffs raise the following issues on appeal, which we restate:

1.  Whether the trial court erred in granting Defendants' motion for directed verdict.

2.  Whether Plaintiffs presented sufficient facts to constitute a prima facie case regarding Defendants' liability.

3.  Whether insurance agents are liable for providing misleading information upon which an insured relies and is subsequently damaged.

## III.  STANDARD OF REVIEW

A trial court's decision to grant a motion for directed verdict is a question of law. *Underwood v. HCA Health Servs. of Tennessee, Inc.*, 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). We review a question of law de novo with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV.  DISCUSSION

The standard for reviewing a motion for directed verdict was articulated by the Tennessee Supreme Court in *Johnson v. Tennessee Farmers Mut. Ins. Co.*,

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence.  A motion for a directed verdict

should not be granted unless reasonable minds could reach only one conclusion from the evidence. The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. Accordingly if, material evidence is in dispute or doubt exists as to the conclusions drawn from that evidence, the motion must be denied.

205 S.W.3d 365, 370 (Tenn. 2006) (internal citations omitted).

A motion for directed verdict is a question of law that requires this court to answer one question: whether the non-moving party presented enough evidence to create an issue of fact for a jury to resolve. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citations omitted). A motion for a directed verdict should not be granted "if the party with the burden of proof has presented sufficient evidence to create an issue of fact for a jury to decide." *Id*. (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999). A party has created a jury issue when there is doubt about the conclusions drawn from the evidence. *Id*. There is no jury issue when reasonable minds can only reach one conclusion from the evidence. *Id*; *see also Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000). "A case should go to the jury, even if the facts are undisputed, when reasonable persons could draw conflicting conclusions from the facts." *Keylon v. Hill*, No. E2003-01054-COA-R3-CV, 2003 WL 22927143, at *3 (Tenn. Ct. App. E.S., Dec. 11, 2003) (quoting *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)).

In this case, the trial court granted Defendants' motion for a directed verdict for two reasons. First, the court found that Mr. Kahn's reliance on Ms. Gregg's insurance recommendation was not justified because Mr. Kahn should have had independent knowledge of the value of the building. Second, the court found that there was no proof of financial loss, stating "there is no proof really about what the value of the building is from anybody other than the insured amount that the building had. That's the only proof we have about anything about the value of the building." Defendants argue that a directed verdict was appropriate in this case because Plaintiffs failed to prove damages or establish that Mr. Kahn justifiably relied on the advice of Ms. Gregg.

A claim for negligent representation requires a showing of the following:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon

the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). The Tennessee Supreme Court has called section 552 of the Restatement (Second) of Torts "the guiding principle in negligent misrepresentation actions against other professional and business persons." *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 301 (Tenn. 2007); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

An essential requirement for a claim of negligent misrepresentation is "detrimental reliance on a false premise." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005) (supporting citations omitted). To succeed on a claim of negligent misrepresentation, the plaintiff must prove that he or she relied justifiably on the defendant's statements. *See Lambdin v. Garland*, 723 S.W.2d 953, 956 (Tenn. Ct. App. 1986). It is the plaintiff's burden to establish that his or her reliance on the defendant's statements was reasonable. *Nofal*, 185 S.W.3d at 409; *see also Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 238 (Tenn. Ct. App. 1992).

At trial, Plaintiffs called three witnesses: Mr. Kahn, Ms. Gregg, and Robert Marlino, Project Manager with Smee Busby Architects. Mr. Marlino holds a degree in architecture, and in his capacity as a project manager, he is trained and familiar with determining the square footage of a building. After the administration building was destroyed by the fire, Mr. Marlino traveled to English Mountain and used a tape measure to determine the square footage of the building. He testified that he calculated the square footage of the building to be 9,187 square feet.

Ms. Gregg testified that it is an accepted practice for insurance agents to recommend the value of replacement cost by multiplying the square footage of the building by the cost to replace one square foot. Regarding the policy at issue, Ms. Gregg's testimony revealed that the cost to replace a square foot was $90 and that she used the number of 5,000 square feet in reaching her recommendation of $450,000 as the coverage limit for the administration building's replacement cost. To determine the square footage of a building, Ms. Gregg stated that she typically requires the customer to provide the square footage, but in this case, she testified:

> I don't recall where the number [the square footage of 5,000] came from, but I do not believe it came from the customer.

She further testified that she believed that Mr. Kahn relied on the recommendations that she offered regarding the coverage for the facility. Mr. Kahn corroborated this fact with his own

testimony, stating that he was "very impressed" by Ms. Gregg's presentation and that he relied on her proposal for the coverage limits prior to executing the insurance policy. On cross-examination, however, Mr. Kahn conceded that he took no steps to have the buildings on English Mountain appraised or measured.

Defendants urge this court to affirm the trial court's grant of the directed verdict, claiming there is no evidence that Mr. Kahn's reliance on Ms. Gregg's recommendations was justified. We disagree. The trial testimony illustrates that Ms. Gregg was responsible for preparing a proposal for the property's insurance needs and that she visited English Mountain for the purpose of determining potential liabilities. Mr. Kahn testified that he did not know the value of the administration building because he paid one price for the entire property. He also testified that he did not know the cost to replace one square foot for the administration building. Because Mr. Kahn did not provide the square footage for any of the buildings, he assumed that Ms. Gregg obtained and verified that information from her initial visit on the property.

In this case, it is undisputed that the type of coverage at issue is replacement cost coverage. Insuring a building for the actual cash value differs from replacement coverage in that the amount of coverage totals the replacement cost of the building less the depreciated value of the building. This is a significant distinction because insuring a building for replacement cost coverage, as Mr. Kahn did, means that the actual value of the building is of little importance because the insurance agent will use a standard figure for the replacement cost of one square foot and multiply it by the square footage of the building to be insured. The trial court's finding that Mr. Kahn's reliance on Ms. Gregg's recommendations was unreasonable is one based on weighing the evidence. When presented with a motion for directed verdict, the trial court should not weigh the evidence, but only answer the question of whether the plaintiff presented enough evidence to create an issue of fact. Here, Plaintiffs presented such evidence.

From the evidence, one conclusion cannot be clearly reached. Our review of the record indicates that Plaintiffs provided sufficient proof to create an issue for a jury to resolve. In taking the strongest legitimate view of the evidence in favor of the nonmoving party, which in this case is Plaintiffs, we conclude that a directed verdict was not appropriate. The administration building was grossly under-insured based on the proposal prepared by Ms. Gregg. Her proposal included an estimate of the building's square footage that was off by approximately 4,000 square feet. Due to the inaccurate square footage, the amount for the coverage limit did not come close to covering the building's replacement cost after the building was destroyed in a fire. It is unclear from the evidence the source of the figure for 5,000 square feet, but both Ms. Gregg and Mr. Kahn testified that it did not come from Plaintiffs.

We find that reasonable minds may differ in the conclusions they reach from the evidence presented at trial. Therefore, under the standard of review for a directed verdict, Plaintiffs' proof can lead to conflicting conclusions that warrants an issue for a jury. Accordingly, we reverse.

Having decided the dispositive issue of this appeal, we will not address the other issues and arguments raised by the parties.

## IV. CONCLUSION

The judgment of the trial court granting a directed verdict in favor of Defendants is reversed and the case is remanded to the trial court for a new trial and for the collection of costs. Costs of this appeal are assessed against appellees, Susanne Crusenberry-Gregg and the Assurance Center.

_____
JOHN W. McCLARTY, JUDGE