IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 12, 2015 Session


**THE COHN LAW FIRM, ET AL. v. YP SOUTHEAST ADVERTISING & PUBLISHING, LLC, AND YP TEXAS REGION YELLOW PAGES, LLC**

**Appeal from the Chancery Court for Shelby County**
**No. CH1400953     Kenny W. Armstrong, Chancellor**

_____

**No. W2014-01871-COA-R3-CV – June 24, 2015**
_____


Plaintiff law firm and lawyer brought suit against defendant advertising companies alleging, *inter alia*, breach of contract and misrepresentation. Defendants moved to dismiss the complaint because the parties' contracts included a forum selection clause that provided all litigation arising from the contracts would take place in the state of Georgia. The trial court found the forum selection clause enforceable and granted defendants' motion to dismiss. On appeal, plaintiffs argue that the trial court erred in enforcing the forum selection clause because the contracts are adhesion contracts and unconscionable. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J. and BRANDON O. GIBSON, J., joined.

William A. Cohn, Cordova, Tennessee, for the appellants, The Cohn Law Firm, and William A. Cohn.

Robert Dale Grimes and Meredith M. Thompson, Nashville, Tennessee, for the appellees, YP Southeast Advertising & Publishing, LLC, and YP Texas Region Yellow Pages, LLC.

## OPINION

### Background

This appeal involves several contracts for advertising services that Appellees YP Southeast Advertising & Publishing, LLC and YP Texas Region Yellow Pages, LLC ("Appellees") provided to The Cohn Law Firm and Attorney William A. Cohn ("Appellants"). Appellants filed their original complaint on January 20, 2014, and their first amended complaint on February 14, 2014, to include a mistakenly omitted page. In their first amended complaint, Appellants alleged that they had entered into annual contracts since the 1980s with Appellees wherein they agreed to purchase advertising in the telephone directory and some internet advertising when available. Appellants contend that they timely paid all monthly billings.

According to Appellants, Appellees also advised them regarding whether the advertising was successful. In the summer of 2008, Appellants noticed that the advertising results had been decreasing and wanted to lower the price and amount of print advertising; however, Appellants assert that Appellees assured them the advertising was indeed working. Appellants claimed that Appellees provided false information and false advice regarding the current business generated by the advertisements. In sum, the allegations against Appellees indicate that Appellants became dissatisfied with the advertising results. Appellants requested that the trial court rescind the 2013-2014 contract and the 2014-2015 contract, or alternatively, reform the contracts. Appellants did not specifically seek any relief with regard to the parties' previous contracts. Additionally, Appellants sought a declaratory judgment that the contracts were adhesion contracts, that Appellees had breached the contracts, and that the amount owed to Appellees by Appellants be reduced from $7,800.00 monthly to $2,900.00 monthly. Appellants also requested monetary damages in the amount allegedly overpaid to Appellees and that Appellees be enjoined from recovering any alleged debts. Notably, Appellants did not attach any of the written contracts to either the initial complaint or the first amended complaint.

On March 31, 2014, Appellees filed a motion to dismiss, pursuant to Tennessee Rules of Civil Procedure 12.02(2) and (3), based on alleged lack of personal jurisdiction and improper venue. In their attached memorandum of law, they asserted that the parties' contract[1] contained a forum selection clause requiring all contract-related disputes to be filed

---

[1] We note that the parties in this case repeatedly refer to the contracts at issue in this case as a single contract, despite the fact that Mr. Cohn's complaint seeks rescission of two separate contracts. While it is clear from the record that the 2013-2014 contract contains a forum selection clause, no copy of the 2014-2015 contract is included in the record. Regardless, after a thorough review of both the record and Mr. Cohn's brief,

in the United States District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia. Appellees attached the parties' 2013-2014 contract, titled "YP Advertiser General Terms and Conditions," and a "Summary Order Page," which incorporated the terms and conditions by reference. The contract titled YP Advertiser General Terms and Conditions includes the following paragraph:

> **18. Miscellaneous; Exclusive Venue.** This Agreement and all claims and disputes arising under or relating to this Agreement will be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to its conflicts of laws principles. Any action or proceeding arising under or relating to this Agreement shall be filed only in the United States District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia. Advertiser hereby consents and submits to the exclusive jurisdiction and venue of those courts and waives any objection based on the convenience of these exclusive venues. . . . If any provision of this Agreement is deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of any remaining provisions.

The Summary Order Page provides that the customer's name is "Cohn Law Firm," and it was signed by Mr. Cohn.

Approximately one month later, on April 25, 2014, Appellants filed their second amended complaint[2] and added Regions Bank as a defendant. Regions Bank was voluntarily non-suited by Appellants on October 30, 2014. Upon the filing of the second amended complaint, Appellees filed a renewed motion to dismiss, again citing the forum selection clause in the parties' contracts.

---

we cannot discern any argument that the two contracts should be treated disparately or that the 2014-2015 contract does not contain a similar or identical forum selection clause. Accordingly, any argument that the 2014-2015 contract is not also subject to a forum selection clause directing Mr. Cohn to file suit in Georgia is waived.

[2]Appellants' second amended complaint is the operative complaint in this appeal and is referred to as the "complaint" in this Opinion.

Appellants responded to Appellees' motion to dismiss on May 31, 2014. Appellants alleged that the parties' contracts were adhesion contracts, that Georgia was an inconvenient forum, and that Mr. Cohn would not have knowingly agreed to litigate in Georgia. In support, Appellants filed the affidavit of Mr. Cohn. In the affidavit, Mr. Cohn states that the contracts are ones of adhesion because "[i]t was always sign this or you get nothing." He alleges that the terms were never negotiable, and he had no choice in the terms. The remainder of the affidavit explains that neither party has a substantial connection with the state of Georgia.

After a hearing on the motion to dismiss,[3] the trial court entered an order on August 1, 2014, granting Appellees' motion to dismiss. The trial court's order provides:

> Based upon the Motion and Memorandum filed by [Appellees], the Response in Opposition [(to which Mr. Cohn's affidavit was attached)] filed by [Appellees], the arguments of counsel at the hearing on this matter, and the entire record in this case, the Court finds [Appellees'] Motion to Dismiss is well-taken. After consideration of the factors set forth in **Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.**, 650 S.W.2d 378 (Tenn. 1983), the Court finds that the forum selection clause . . . is valid and enforceable.

From this order dismissing the complaint, Appellants timely filed their appeal.

## Issue Presented

As we perceive it, this appeal presents one issue: whether the trial court erred in granting Appellees' motion to dismiss on the basis of the forum selection clause in the parties' contract?

## Discussion

### Standard of Review

As an initial matter, we must determine the appropriate standard of review. Appellants contend that the motion before the trial court, although termed a motion to dismiss, was actually a motion for summary judgment. Appellants contend that, because the trial court

---

[3] The record does not include a transcript of this hearing or of any oral ruling by the trial court.

considered items outside the pleadings, the motion to dismiss is converted to a motion for summary judgment.[4] We respectfully disagree.

Tennessee Rule of Civil Procedure 12.02 specifically provides, in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Here, Appellees moved to dismiss Appellants' complaint based on Tennessee Rule of Civil Procedure 12.02(2) (lack of personal jurisdiction) and 12.02(3) (improper venue). Thus, while the language of Rule 12.02 specifies that a motion to dismiss brought pursuant to Rule 12.02(6) is converted to a motion for summary judgment when a trial court considers matters outside the pleadings, the same is not true for Appellees' motion brought pursuant to Rule 12.02(2) and (3). *See, e.g.*, **Gordon v. Greenview Hosp., Inc.**, 300 S.W.3d 635, 643 (Tenn. 2009) ("Unlike Tenn. R. Civ. P. 12.02(6) motions for failure to state a claim that are supported or opposed by matters outside the pleadings . . . , Tenn. R. Civ. P. 12.02(2) motions are not converted to motions for summary judgment when either or both parties submit matters outside the pleadings either in support of or in opposition to the motion.") (citing **Chenault v. Walker**, 36 S.W.3d 45, 55 (Tenn. 2001); **Thomas v. Mayfield**, No. M2000-02533-COA-R3-CV, 2004 WL 904080, *5 (Tenn. Ct. App. Apr. 27, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004)) ("[I]t is clear that the same rules apply to both *in personam* jurisdiction and venue."); **McKinney v. Widner**, 746 S.W.2d 699, 702 (Tenn. Ct. App. 1987) ("Rule 12.02 does not authorize the consideration of the motion as a motion for summary judgment except when grounded upon failure to state a claim for which relief can be granted."). Tennessee law generally holds that a motion to dismiss based upon the application of a forum selection clause implicates the doctrine of venue rather than personal jurisdiction. *See generally* **ESI Cos., Inc. v. Ray Bell Constr. Co.**, No. W2007-00220-COA-

---

[4] Appellants' argument on this issue is unclear. Their brief suggests that the trial court could not have found the forum selection clause enforceable unless it failed to consider Appellants' affidavit. The trial court's order granting Appellees' motion to dismiss, however, indicates that the trial court considered "the entire record in this case," which includes the affidavit. Thus, it appears that Appellants are simply dissatisfied with how the trial court interpreted and applied the facts from the affidavit in deciding whether Appellees were entitled to dismissal. Still, as discussed *infra*, the consideration of the matters outside of the pleadings does not convert Appellees' motion into one for summary judgment.

R3-CV, 2008 WL 544563, at *7 (Tenn. Ct. App. Feb. 29, 2008); ***Signal Capital Corp. v. Signal One, LLC***, No. E2000-00140-COA-R3-CV, 2000 WL 1281322, at *3 (Tenn. Ct. App. Sept. 7, 2000), *perm. app. denied* (Tenn. Mar. 19, 2001). Regardless, the standard of review of both types of motions is identical. *See* 32A Am. Jur. 2d *Federal Courts* § 1202 ("The procedural analysis and standards applied in deciding a motion to dismiss for improper venue are generally the same as in deciding a motion to dismiss for lack of personal jurisdiction.") (footnotes omitted).

Both the decisions regarding the exercise of personal jurisdiction over a defendant and improper venue of a lawsuit involve questions of law. ***Franklin Am. Mortgage v. Dream House Mortg. Corp. of R.I.***, No. M2009-01956-COA-R9-CV, 2010 WL 3895531, at *2 (Tenn. Ct. App. Oct. 5, 2010) (personal jurisdiction); ***Jones v. Gwyn***, No. E2011-00084-COA-R3CV, 2011 WL 4477999, at *2 (Tenn. Ct. App. Sept. 7, 2011) (venue) (citing ***S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001)). Accordingly, the appellate courts will review a trial court's decision concerning personal jurisdiction and venue *de novo,* with no presumption of correctness, for the purpose of determining whether the plaintiff has made out a *prima facie* case for the exercise of personal jurisdiction over the defendant. ***Woodruff v. Anastasia Int'l, Inc.,*** No. E2007–00874–COA–R3CV, 2007 WL 4439677, at *3 (Tenn. Ct. App. Dec. 19, 2007), *perm. app. withdrawn* (Apr. 7, 2008); ***In re Clark,*** No. W2005–01687–COA–R3–JV, 2007 WL 152537, at *10 (Tenn. Ct. App. Jan.22, 2007), *no perm. app. filed.* In considering an appeal from a trial court's grant of a motion to dismiss for lack of personal jurisdiction or venue, we take all allegations of fact in the complaint as true and review the trial court's legal conclusions *de novo* with no presumption of correctness. ***State v. NV Sumatra Tobacco Trading Co.***, 403 S.W.3d 726, 739 (Tenn. 2013) ("When weighing the evidence on a Tenn. R. Civ. P. 12.02(2) motion, the trial court must take all factual allegations in the plaintiff's complaint and supporting papers as true."); *see also* 32A Am. Jur. 2d Federal Courts § 1202 ("Thus, on a motion to dismiss for improper venue, the court accepts facts alleged in the complaint as true.").

<u>Forum Selection Clauses Generally</u>

Generally, a forum selection clause is enforceable and binding on the parties entering the contract. ***Lamb v. MegaFlight, Inc.***, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000). A forum selection clause will be upheld if it is fair and reasonable in light of all the circumstances surrounding its origin and application. ***Id.*** (citing ***Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.***, 650 S.W.2d 378 (Tenn. 1983)). A party seeking to invalidate a forum selection clause must prove that the clause resulted from misrepresentation, duress, abuse of economic power, or other unconscionable means. ***Id.***

6

Tennessee law is clear that the party challenging the enforcement of the forum selection clause "should bear a heavy burden of proof." ***Chaffin v. Norwegian Cruise Line Ltd.***, No. 02A01-9803-CH-00080, 1999 WL 188295, \*4 (Tenn. Ct. App. Apr. 7, 1999); *see also* ***Dyersburg***, 650 S.W.2d at 380 (holding that courts "should enforce such a clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so").[5] With the foregoing in mind, we address Appellants' contentions that the parties' contracts and the forum selection clause are unenforceable.

<u>Adhesion Contracts</u>

Appellants' foremost argument is that the forum selection clause is void because the contracts are adhesion contracts. According to the Tennessee Supreme Court:

> An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Black's Law Dictionary* 40 (6th ed. 1990); ***Broemmer*** [***v. Abortion Servs. of Phoenix, Ltd.***], 840 P.2d [1013, 1015 (Ariz. 1992)].

***Buraczynski v. Eyring***, 919 S.W.2d 314, 320 (Tenn. 1996).

---

[5] We note that Appellants' brief provides the following argument:

> The *burden* is **on** *defendant Yps'* [Appellees] "to show that the parties *actually bargained* over the … provision or that it was a reasonable term considering the circumstances." ***Brown v. Karemor Intl., Inc.***, 1999 Tenn. App. LEXIS 249 (Tenn. Ct. App. 1999) Emphasis added. The defendant Yps' have **not** carried this burden.

(Emphasis in original.) Appellants inserted an ellipsis in the above excerpt because they omitted that this case was analyzing an agreement to arbitrate. Of the nine cases cited by Appellants, only one case concerns forum selection clauses. However, in their discussion of the other eight cases, Appellants' citation to authority often omits, via ellipsis, any indication that the case cited concerns an arbitration agreement. While we understand that certain points of law are analogous and may apply in various situations, such is not the case in the way Appellants present their argument. The Court finds this practice misleading.

7

This Court previously discussed the relationship between adhesion contracts and forum selection clauses in *Woodruff v. Anastasia International, Inc.*, No. E2007-00874-COA-R3-CV, 2007 WL 4439677 (Tenn. Ct. App. 2007). In *Woodruff*, the plaintiff, a Tennessee resident, filed suit in the circuit court of Sevier County, Tennessee, against Anastasia International, Inc. ("Anastasia"). *Id.* at *1. Anastasia was a Kentucky corporation with its principal place of business in Maine. Anastasia provided a service to help men find brides from countries in the former Soviet Union. Anastasia maintained a database of women who were interested in marrying American men. For certain fees, Anastasia provided services to facilitate a marriage between its American male clients and foreign women, such as translation services and "Romance Tours" where the clients would have the opportunity to meet local women at social events. The plaintiff entered into two contracts with Anastasia, including one written contract for a "Romance Tour" and an online "click-through" agreement through Anastasia's website for other services. The plaintiff ultimately used Anastasia's services, including corresponding with various women and participating in a "Romance Tour" to Ukraine. However, he became dissatisfied with various aspects of these transactions, and he sued Anastasia in the circuit court for Sevier County.

Anastasia moved to dismiss the plaintiff's complaint citing, *inter alia*, that the contracts signed by the plaintiff included a forum selection clause providing that all litigation would take place in the states of Kentucky or Maine. *Id.* at *2, *4. Ultimately, the trial court found that it did not have personal jurisdiction over Anastasia, but not because of the existence of the forum selection clause. *Id.* at *4. On appeal, this Court concluded that Anastasia had waived the issue of personal jurisdiction, but that the forum selection clause remained viable. The plaintiff argued that the contracts signed with Anastasia were adhesion contracts, and thus, were unenforceable. *Id.* at *5. The court stated that it "agree[d] with Plaintiff that his [c]ontracts with Anastasia may well be contracts of adhesion." However, the finding that the contracts were adhesion contracts did not end the inquiry, as adhesion contracts "are not *per se* unenforceable."

The *Woodruff* Court, relying on the Tennessee Supreme Court's decision in *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996), opined that the determination that a contract is one of adhesion is not determinative of the contract's enforceability. Instead, "[e]nforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* (citation omitted). The Court concluded that nothing in the plaintiff's contracts with Anastasia was beyond the reasonable expectations of an ordinary person. The plaintiff's preference to litigate in his home state of Tennessee was insufficient to invalidate the clauses. Finding no evidence that the forum selection clause was either unconscionable or oppressive, the court upheld the forum selection clause and the dismissal of the plaintiff's complaint. *Id.* at *6.

8

We agree that Appellants have sufficiently alleged a *prima facie* claim that the contracts were adhesion contracts "in that [they were] standardized contracts that were offered on essentially a 'take it or leave it' basis without affording [Appellants] a real opportunity to bargain." *See Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004). However, this conclusion does not end our inquiry.

Tennessee law is clear that the finding of an adhesion contract alone is an insufficient basis to conclude that a forum selection clause is unenforceable. At some points in Appellants' brief, it appears that they concede that in order to void the contracts, there must be a finding of adhesion *and* some other reason to invalidate the clause, such as unconscionability or fraud.[6] Accordingly, even if the contracts are contracts of adhesion, there must also be some showing that the contracts are unconscionable or were fraudulently induced. *See Buraczynski*, 919 S.W.2d at 320 ("We must examine the agreements in question to determine whether they are contracts of adhesion, and if so, whether they contain such unconscionable or oppressive terms as to render them unenforceable."); *see also Lamb*, 26 S.W.3d at 631 ("[I]f Plaintiffs were fraudulently induced into entering the contract with [Defendant], Plaintiffs are not bound by the forum selection clause within the contract."). Here, even assuming that the contracts and the forum selection clause constitute contracts of adhesion, this conclusion does not render the contracts unenforceable. Therefore, we next examine the record to determine whether Appellants sufficiently alleged that the contracts were unconscionable or procured through fraud on behalf of Appellees.

We first address whether Appellants have sufficiently alleged that the contracts were unconscionable. The Tennessee Supreme Court has explained that an adhesion contract is unconscionably unenforceable when it is "oppressive to the weaker party" or when it "serve[s] to limit the obligations and liability of the stronger party." *Buraczynski*, 919 S.W.2d at 320 (citing *Broemmer v. Abortion Servs. of Phoenix Ltd.*, 840 P.2d 1013 (Ariz. 1992)). Tennessee courts have defined unconscionability in general as resulting

---

[6] In Appellants' brief, they state: "If the contract is one of adhesion, the next question is whether it contains such unconscionable or oppressive terms as to render it unenforceable." We interpret this argument as an acknowledgement that just a finding of adhesion is alone insufficient to render a contract unenforceable. However, to the contrary, Appellants' argument also equates a finding of an adhesion contract to unenforceability of that contract. Indeed, several times in their brief, Appellants state that a finding that a contract is an adhesion contract renders the contract void. For example, Appellants state: "Since the Contract between the parties was a contract of adhesion, its terms are void, and the venue clause is therefore void. The Court cannot base a dispositive ruling on a void clause in a contract." While Appellants may be correct that the contracts in this case are ones of adhesion, they provide no citation or explanation for their argument that an adhesion contract is *per se* unenforceable. Our research has not uncovered any authority to support Appellants' contention in this regard.

> when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) (citing *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). Where the parties possess equal bargaining power or sophistication, courts are less likely to find an unconscionable bargain. *Id.* (citing *Royal Indem. Co. v. Westinghouse Elec. Corp.*, 385 F.Supp. 520 (S.D.N.Y. 1974)). Terms that are common in the industry also often lead a court to find that a contract is not unconscionable. *Id.* (citing *Posttape Assocs. v. Eastman Kodak Co.*, 450 F.Supp. 407 (E.D.Pa. 1978)).

In the instant case, Appellants contend that the contracts were unconscionable because they were presented on a "take-it-or-leave-it basis." We have previously concluded that Appellants have made out a *prima facie* case that the contracts were adhesion contracts; however, as discussed above, this does not end our inquiry, as an adhesion contract is not per se unconscionable or otherwise unenforceable. Accordingly, we consider Appellants' other allegations that the contracts were unconscionable. To that end, Appellants assert that the contracts were unreasonably lengthy and that the forum selection clause was buried well into them. Appellants also assert in their brief they had to sign the contracts quickly. Last, Appellants assert that they would have to pay an oppressive amount of money to litigate the case in Georgia. Mr. Cohn's affidavit attached to the response to the motion to dismiss is replete with allegations demonstrating that Georgia is an inconvenient forum and that, had Appellants known of the forum selection clause, they would have never willingly agreed to litigate their claims there. Based on the foregoing, Appellants request that this Court conclude the contracts are unconscionable and the forum selection clause thereby void.

Upon review, we find nothing in the parties' contract (i.e., the one contract that was included in the record) or in the record demonstrating that the parties' other contracts or the underlying transaction was unconscionable or otherwise beyond the reasonable expectations of an ordinary person. Here, we reject as a matter of law Appellants' contention that a mere three-page contract is unreasonably long or that the forum selection clause was buried in the contract. Moreover, we cannot agree that either Appellants' complaint or Mr. Cohn's affidavit support their allegation that they were pressured into hastily signing the contracts, as neither of those documents allege that fact. Indeed, it appears that Appellants continued to enter into contracts with Appellees for advertising services for more than twenty years and only seek to invalidate contracts from recent years; accordingly, by the time the 2013-2014

10

and 2014-2015 contracts were executed, Appellants had ample time to consider the contracts' terms. As such, these allegations are insufficient to establish that the provisions in the contracts were otherwise oppressive or unconscionable.

Finally, like the defendant corporation in **Woodruff**, it is reasonable to expect that corporations such as Appellees, who have many customers, would prefer to limit where they are subject to suit. *See **Woodruff***, 2007 WL 4439677, at *5 (holding that the inconvenience of the forum state is insufficient to invalidate a forum selection clause) (citing **Carnival Cruise Lines, Inc. v. Shute**, 499 U.S. 585, 593 (1991); **Thomas v. Costa Cruise Lines N.V.**, 892 S.W.2d 837, 841 (Tenn. Ct. App. 1994)). We note that the forum state selected by Appellees is a bordering state of Appellants' home state of Tennessee. Additionally, we find no evidence in the record from which we can conclude that there was such uneven bargaining power between the two parties that resulted in such an "inequality of the bargain is so manifest as to shock the judgment of a person of common sense." **Trinity Indus.**, 77 S.W.3d at 171 (citation omitted). Although Appellees are large corporate entities, Mr. Cohn, a seasoned attorney, was also a sophisticated and intelligent party. *See **Trinity Indus.***, 77 S.W.3d at 171; **Shepherd v. Weather Shield Mfg., Inc.**, No. W1999-00508-COA-R3-CV, 2000 WL 34411064 (Tenn. Ct. App. Aug. 21, 2000). Therefore, we conclude that even assuming arguendo that the contracts at issue are adhesion contracts, Appellants failed to meet their heavy burden to show that the contracts are unconscionable.

In addition to their unconscionability argument, Appellants appear to also assert that they were fraudulently induced into entering the advertising contracts with Appellees and that such fraud renders the contracts unenforceable. In their brief, Appellants appear to argue that their allegations of fraud contribute to their position that the contracts were unconscionable.[7] From what we can discern from Appellants' brief, their fraud allegations appear as part-and-parcel of their argument regarding adhesion contracts and unconscionability. Thus, we address Appellants' fraud allegation only in the context of that issue.[8]

---

[7] Specifically, Appellants argue: "A contract of adhesion by definition is a *coercive* event which is *unconscionable*. . . . The *complaint* further *alleges* that an *abuse of economic power* was involved and also that *misrepresentation* of the facts and the effectiveness of the defendants' analysis techniques were the *fraudulent* bases on which the defendants convinced the plaintiffs to agree to the contracts." (Emphasis in original.) (Citations omitted.)

[8] We note, however, that other caselaw has indicated that fraud in the inducement of a contract, standing alone, may invalidate a forum selection clause because it invalidates the entire contract. *See generally **Lamb v. MegaFlight, Inc.**, 26 S.W.3d 627 (Tenn. Ct. App. 2000). While Appellants' complaint seeks the remedy of rescission of the contract, nothing in Appellants' statement of the issues presented for review can be fairly read to raise fraudulent inducement as an independent basis for denying the motion to dismiss. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). Accordingly, we

11

Appellants allege that Appellees fraudulently misrepresented the amount of business Appellants were receiving from Appellees' advertising services and this misrepresentation induced Appellants to enter into additional contracts with the Appellees. Appellants' complaint contains the following allegations:

> 5) The plaintiffs derived 70% of his [sic] consumer clientele from the defendants until 2008, at which time the percentage began to dwindle to 15 to 20%. The defendants knew of this and did not just disclose this, but denied this fact and offered false information and false advice by failing to advise the claimant to maximize his internet presence and minimize his book presence in order to maximize their fees in contravention of the fiduciary responsibilities that they had constructed.
>
>                      \*   \*   \*
>
> 10) . . . The plaintiffs ***annually*** continued to advise of the continuing deterioration of the print results, but the defendants' representatives continued to invoke the trust of the plaintiffs with false representations that the number of calls was somehow a valid indication of how the ads were doing, and the defendants [] continued to recommend more and more **print** advertising.
>
> 11) The plaintiffs then analyzed all of his client data sheets in 2012 and again advised the defendant [] through their employees that the percentage of appointments from print advertising had dwindled to 15% to 20%. The said defendant against responded the same as before. .[sic]

(Emphasis in original.) With Appellants' allegations in mind, we turn to whether Appellants have sufficiently alleged fraud in the underlying transactions so as to invalidate the forum selection clause.

First, we address the deficiencies in the record that hinder our review. Despite basing their lawsuit on the contracts at issue,[9] Appellants' complaint does not include any of the parties' actual contracts. Rule 10.03 of the Tennessee Rules of Civil Procedure provides:

---

decline to address it.

[9] From what we can discern, Appellants' complaint suggests the following causes of actions:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

In this case, Appellants clearly sought relief based on the written contracts and, therefore, were required to attach the contracts to the complaint. Omitting the contracts from the complaint obviously presents a hindrance to appellate review, and the complaint sets forth no allegations that would suggest Appellants were unable to attach the contracts.[10] Appellees, on the other hand, did provide a copy of one of the parties' contracts as an attachment to their initial motion to dismiss.[11]

---

fraudulent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty. Appellants seek a declaratory judgment, rescission, reformation of the contract or contracts at issue, injunctive relief, and monetary damages. "The Court of Appeals has held that in Tennessee there is no cause of action in tort for breach of the duty of good faith in the performance of a contract." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 685 (Tenn. 1996) (citing *Solomon v. First Amer. Nat'l Bank*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989); 17 Am.Jur.2d *Contracts* § 732 (1991)). Thus, Appellants' complaint is premised on the parties' contracts.

[10] In Appellants' brief, however, they cite to the first page of the original complaint, the first amended complaint, and the second amended complaint, and state that the "document sought to be utilized was a *contested* document which was directly *addressed* in the pleadings." Simply addressing a document in a pleading or asserting that the document is contested does not excuse a plaintiff from complying with Rule 10.03.

[11] The attached contract appears to represent the parties' agreement at a date in 2013. The contract provides that it had been revised on May 20, 2013 and also includes the notation "V.07/22/2013." The record does not reflect whether the same agreement had been used in previous agreements between the parties. Additionally, at one point, Appellants assert that the agreement was an online click-through contract. However, no such contract appears in the record.

13

In addition to Appellants' failure to attach the contracts to the complaint, we note that Appellants' allegations in their complaint are meager in light of Rule 9.02 of the Tennessee Rules of Civil Procedure.[12] Rule 9.02 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Tenn. R. Civ. P. 9.02. Thus, the rule requires "particularity." *Id.* "Particularity" connotes a "concern[] with details, [or] minut[ia]." ***Diggs v. Lasalle Nat'l Bank Ass'n***, 387 S.W.3d 559, 565 (Tenn. Ct. App. May 30, 2012) (citing *The New Lexicon Webster's Dictionary of the English Language* 954 (1993)). Particularity in pleadings "requires singularity—of or pertaining to a single or specific person, thing, group, class, occasion, etc., rather than to others or all." *Id.* From our review of the complaint, particular facts giving rise to the Appellants' alleged fraud are simply not averred. Here, while it is apparent that Appellants' complaint contains some allegations that they were fraudulently induced into entering the contracts, the complaint does not specifically assert any of the circumstances surrounding the alleged fraud, such as which of the two defendants made the fraudulent misrepresentations, where the misrepresentations were made, on what date they were made, or which year's contract the misrepresentations concerned. Appellants simply pleaded conclusory statements, as those stated above, indicating that Appellees made "fraudulent representations." Despite this procedural shortcoming, we will address whether the allegations that are actually contained in Appellants' complaint and Mr. Cohn's affidavit are sufficient to show fraud in order to rescind the forum selection clause. We conclude, however, that even taking all of Appellants' allegations as true, *see generally **Trau-Med of Amer., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691 (Tenn. 2002), these allegations fail as a matter of law to make out a *prima facie* case of fraud sufficient to invalidate the parties' forum selection clause.

We note again that Tennessee law is clear that the party challenging the enforcement of the forum selection clause bears the burden of demonstrating why the clause is unenforceable. ***Chaffin***, 1999 WL 188295 at *4; *see also **Dyersburg***, 650 S.W.2d at 380. Furthermore, to establish a claim for fraudulent misrepresentation, a plaintiff must show the following elements:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the

---

[12] Although Rule 9.02 was not relied upon by the trial court in dismissing Appellants' complaint, we note that this Court may affirm a trial court's decision based upon different grounds. ***Continental Cas. Co. v. Smith***, 720 S.W.2d 48, 50 (Tenn. 1986).

> misrepresented fact; and (6) plaintiff suffered damage as a result
> of the misrepresentation.

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012); *see also **Kincaid v. SouthTrust Bank**, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). In this case, as the allegations in Appellants' complaint relate to Appellants being fraudulently induced to entering into the contracts with Appellees, we cannot conclude that they have sufficiently carried their heavy burden. Specifically, we are unable to conclude that Appellants have sufficiently alleged that they justifiably relied on Appellees' alleged misrepresentations. Appellants' claim that the alleged fraudulent inducement to sign the contracts establishes unconscionability must, therefore, fail.

For our conclusion, we find guidance in the case of *Lambdin v. Garland*, 723 S.W.2d 953 (Tenn. Ct. App. 1986). In *Lambdin*, this Court held that the plaintiff buyer of a funeral home failed to sufficiently allege fraud in his complaint. *See id.* at 956. The plaintiff buyer in *Lambdin* contracted with the seller of a funeral home to buy the business. *Id.* at 954. The plaintiff buyer sued the seller's wife, alleging that she had misrepresented the number of funerals conducted annually and the number of members in the "burial association." *Id.* at 956. Still, the seller's wife had given plaintiff buyer "the opportunity to determine all of the financial elements of this business prior to its purchase, or at least he was afforded the opportunity to make this determination and no one denied him access to any details." After a bench trial, the trial court dismissed the complaint. *Id.* at 954. On appeal, this Court affirmed and held that the plaintiff buyer did not satisfy the reliance element of his fraud claim because he had examined the funeral home's records himself.

In the case-at-bar, despite Appellants' allegations of fraud, Appellants admit that they obtained knowledge that the advertising results of Appellees were decreasing. For example, Appellants' complaint alleges that, as early as summer 2008, they were aware that the success of the Appellees' advertisements had dwindled and had advised the Appellees of this fact. Appellants further alleged that in 2012 they "analyzed all of [the] client data sheets [] and again advised that the percentage of appointments from print advertising had dwindled to 15% to 20%" from 70% previously. However, Appellants seek rescission or reformation of contracts covering only the 2013-2014 and 2014-2015 advertising years. Thus, it appears that, as early as 2008, Appellants knew that the results from Appellees' advertisements were questionable because they had informed Appellees of this knowledge, and Appellants, as stated in the complaint, kept their own "client data sheets." Despite this knowledge, Appellants entered into additional contracts with the Appellees. Like the plaintiff buyer in *Lambdin*, because Appellants had independent knowledge of the inaccuracy of the facts that

15

allegedly induced them to sign the contract, Appellants simply have not shown that their reliance on any alleged misrepresentations by Appellees was justifiable. *Id.* Without justifiable reliance, there can be no fraud. *PNC*, 387 S.W.3d at 548. Accordingly, the allegations in both Appellants' complaint and Mr. Cohn's affidavit are insufficient, as a matter of law, to show that the contracts are unconscionable on the basis of fraud.[13]

This holding, however, does not end our inquiry, as Tennessee courts apply certain principles, discussed *infra*, when looking specifically at forum selection clauses. We next turn to those principles and examine the forum selection clause at issue.

## The *Dyersburg* Factors[14]

In addition to the above analysis concerning allegations of adhesion contracts, unconscionability, or fraud, Tennessee courts utilize a list of factors when looking directly at a forum selection clause. According to the Tennessee Supreme Court, a court must give effect to a forum selection clause and refuse to entertain the action unless:

> (1) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (2) or the other state would be a substantially less convenient place for the trial of the action than this state; (3) or the agreement as to the place of the action was obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means; (4) or it would for some other reason be unfair or unreasonable to enforce the agreement.

*Dyersburg*, 650 S.W.2d at 380 (quoting *The Model Choice Forum Act of 1968*). The *Dyersburg* Court further stated that Tennessee courts should give consideration to the above factors and should enforce a forum selection clause unless the party challenging the clause

---

[13] Our holding herein does not prevent Appellants from presenting additional evidence that the contracts should be rescinded or reformed due to fraud and unconscionability in the appropriate forum. Instead, our analysis simply concerns whether the documents in the record provide sufficient evidence, at this juncture, to show that the forum selection clause should not be enforced.

[14] Although Appellants do not rely on these factors in their brief, we note that the Tennessee Supreme Court's case of *Dyersburg Machine Works, Inc. v. Rentenbach Engineering Co.*, 650 S.W.2d 378 (Tenn. 1983) offers the appropriate framework under which Tennessee courts should analyze forum selection clauses. *Dyersburg*, 650 S.W.2d at 380 ("We conclude that the courts of this state should give consideration to the above mentioned factors."). Indeed, this is the framework utilized by the trial court in upholding the forum selection clause.

16

demonstrates that enforcement would be unfair or inequitable. *Id.* Our research demonstrates that the factors promulgated by the *Dyersburg* Court have been followed in numerous subsequent cases. *E.g.*, *Sevier Cnty. Bank v. Paymentech Merch. Servs.*, No. E2005-02420-COA-R3-CV, 2006 WL 2423547 (Tenn. Ct. App. Aug. 23 2006); *Spell v. Labelle*, No. W2003-00821-COA-R3-CV, 2004 WL 892534 (Tenn. Ct. App. Apr. 22, 2004); *Signal Capital*, No. E2000-00140-COA-R3-CV, 2000 WL 1281322 (Tenn. Ct. App. Sept. 7, 2000); *Tennsonita (Memphis), Inc. v. Cucos, Inc.*, No. 36, 1991 WL 66993 (Tenn. Ct. App. May 2, 1991).

We now apply the factors to the case-at-bar. First, the record does not demonstrate, and Appellants do not allege, that they would be unable to obtain effective relief in the selected forum of Georgia. Although Mr. Cohn's affidavit provides that Georgia would be an inconvenient forum, the affidavit includes no allegations that Appellants would be denied an appropriate remedy if required to litigate in Georgia.

In the same vein, the second factor is not met because, while Appellants allege in Mr. Cohn's affidavit that they have no contact with the forum state, mere inconvenience is insufficient to render the forum selection clause unenforceable. *See Woodruff*, 2007 WL 4439677 at *5 (holding that the "fact that a resident of Tennessee or any other state other than [the forum state] would prefer to sue in his home state rather than in [the forum state] does not, by itself, make[] the forum selection clause" unenforceable). Furthermore, Appellees are not Tennessee corporations, and there is nothing in the record to suggest that all witnesses who may be called would be Tennessee residents. *See Dyersburg*, 650 S.W.2d at 381 (holding that the second factor was met because the chosen forum of Kentucky was "a substantially less convenient place for trial [] wherein all witnesses are Tennessee residents, the plaintiffs and the defendants, . . . are Tennessee corporations"). "[T]he party resisting a forum selection clause must show more than inconvenience or annoyance such as increased litigation expenses, and the party cannot rely on facts and circumstances that were present or reasonably foreseen when they signed the contract." *ESI*, 2008 WL 544563, at *7 (Tenn. Ct. App. Feb. 29, 2008) (citing *Sevier Cnty. Bank*, 2006 WL 2423547 at *6). In addition, "convenience is evaluated from the perspective of all the parties, not just the Plaintiffs." *ESI*, 2008 WL 544563, at *7 (citing *Signal Capital*, 2000 WL 1281322, at *3). As such, Appellants' assertion that they would be required to expend more to litigate in Georgia is simply insufficient to defeat application of the forum selection clause.

As to the third factor, although Appellants have indicated that the contracts as a whole were procured through "fraudulent representations," we find nothing in the record to suggest that the "agreement as to the place of the action" was specifically procured unfairly. Indeed, Appellants do not specifically reference the forum selection clause anywhere in their

17

complaint. While Mr. Cohn's affidavit does mention the clause, the affidavit is devoid of any allegations demonstrating that the clause itself was procured through fraud on behalf of Appellees. Last, Appellants do not argue nor does the record suggest that the forum selection clause was otherwise unfair, especially in light of our prior holding that Appellants failed to establish that the contracts as a whole are unconscionable. Accordingly, we find nothing in the record to suggest that any of the factors in *Dyersburg* exist to invalidate the forum selection clause in this case.

## Conclusion

The decision of the Chancery Court of Shelby County granting Appellees' motion to dismiss is hereby affirmed. We remand this case to the trial court for further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellants The Cohn Law Firm and William A. Cohn and their surety.

_____
J. STEVEN STAFFORD, JUDGE

18